HOGGSON BROTHERS, Appellant, v. FRANK SPIEKERMAN, Respondent.

First Department, December 1, 1916.

Contract — action upon building contract — admissibility of evidence as to overhead expenses in performing work — expense of doing over negligent work — when action may be brought on general account to recover on several contracts.

Where, in an action on account for goods sold and delivered and material furnished and for labor and services performed by the plaintiffs for defendant in the erection, furnishing, etc., of a house, stable, garage, outbuildings and grounds it appears that the plaintiffs agreed "if on completion of the contract we find that the cost to us, plus ten per cent profit, is less than the sum named above, to credit the difference on the contract price," it was error for the court to strike out testimony as to overhead charges, because the words "cost to us" were understood by both parties to mean a due proportion of overhead charges in addition to amounts paid for such services and material.

But the plaintiffs should not be allowed to include the expenses of doing over their negligent work in their estimate of cost, though they should be allowed to include therein the cost of doing it right originally.

The plaintiffs were not bound to bring an action on each separate contract with the defendant because said contracts were all related to the development of the defendant's estate, and were treated by him as one transaction, and it was agreed by both parties to treat the matter as a general account between them.

APPEAL by the plaintiff, Hoggson Brothers, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the

16th day of March, 1916, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*Selden Bacon,* for the appellant.

*George N. Hamlin,* for the respondent.

DAVIS, J.:

In this case the trial court dismissed the complaint at the close of plaintiff's case.

The action is brought to recover $2,035.53 and interest upon an account for goods sold and delivered and materials furnished and for labor and services performed by the plaintiff for defendant in the erection, furnishing and embellishment of a house, stable, garage, outbuildings and grounds of defendant at Greenwich, Conn., between November 1, 1910, and January 21, 1913. The complaint alleges that $6,035.53 became payable on said account on the 21st of January, 1913, that $4,000 was paid on the 3d of May, 1913, and that $2,035.53 is still due.

The defendant denies that anything is due the plaintiff. He admits that the plaintiff performed work, labor and services and furnished materials, but states that they were reasonably worth no more than $55,850, and that he paid $56,000; that the work and materials were furnished under various agreements with plaintiff, and that defendant agreed to pay in the aggregate a sum not to exceed $58,035.53; that he has paid $56,000; and further, that the plaintiff failed to fulfill the contract in that some of the work was negligently done, and that to do it properly would cost at least $2,185.53. And he asks for a dismissal of the complaint. Defendant also denies that there was any account between the parties, or that anything was due upon an account upon which an action could be brought, claiming that the work and services and materials were the subject of many different separate contracts, and that the plaintiff should have brought its action upon each separate contract.

The dispute is mainly over the contract for the building of defendant's house. The other contracts related to the building

of a barn and garage including furnishing, decorating, etc. The house contract is a type of all the contracts and with the acceptance is as follows:

"ESTIMATE NUMBER 10245.

"We hereby propose to furnish plans, specifications and satisfactory architectural services, also all labor and materials required, to execute the following:

"Residence for Mr. Frank Spiekerman at Greenwich, Connecticut, not including decorations, hangings, portieres, shades, sash curtains and electric fixtures for a sum not to exceed $28,500.

"All the plans, specifications, details, sketches and samples to be submitted to and approved by you before starting the work.

"We agree to allow you the privilege of cancelling the order at any time before the work is begun, and, in the event of our not going on with the work, to accept as our remuneration a sum based on the schedule of charges endorsed by the American Institute of Architects.

"We further agree, if on completion of the contract we find that the cost to us, plus 10 per cent profit, is less than the sum named above, to credit the difference on the contract price.

"It is understood and agreed that payments shall be made as the work progresses, to within 10 per cent of work actually completed at the building and of work completed elsewhere and ready to install, the request for which, if required, shall be accompanied by an insurance policy and bill of sale.

"Form 36.          Respectfully submitted,

"HOGGSON BROTHERS,

"Per WM. S. McNAMARA."

"HOGGSON BROTHERS,

"7 East Forty-Fourth Street,

"New York:

"GENTLEMEN.— I hereby accept your estimate No. 10245 for the amount of $28,500.00.

"Very truly,

"*March 3rd*, 1911.          FRANK SPIEKERMAN."

After the making of this contract it appears that defendant wanted certain additional items included in the contract as

appears from plaintiff's letter of April 11, 1911, inclosing an estimate ⚹ 10350 for the additional work. This estimate amounted to $4,500 and was accepted by defendant with a change from $4,500 to $3,500. The plaintiff acquiesced in this change as appears from its letter of April 12, 1911, in evidence.

Thereafter, on or about May 3, 1911, plaintiff submitted plans and specifications to the defendant, who signed them and returned them with a letter to plaintiff and the plaintiff acknowledged the receipt of the defendant's approval of the plans and estimate, as follows:

> "HOGGSON BROTHERS,
> "Contracting Designers of Residences,
> "Banks, Clubs & Libraries
> "7 East Forty-fourth Street, New York.
> "Final Approval and Acknowledgment.

"Messrs. HOGGSON BROTHERS,
> "7 East 44th Street,
> "New York:

"DEAR SIRS.— I have carefully examined all the plans and specifications referred to and forming part of your estimate and contract designated by Number 10245–10350 revised and find same correct and satisfactory.

"I hereby approve same complete, and instruct you to proceed with the work as so specified, in accordance with all the terms of your acceptance below.

> "Yours very truly,
> "FRANK SPIEKERMAN.

"Date *May 3rd*, 1911.

----

"We acknowledge receipt of your above final approval of all plans, specifications, submitted to you as indicating the work we have agreed to do for you under our Contract Form 36 and designated by number 10245–10350 revised.

"We accept your instructions to proceed with the work, which will have our prompt and careful attention, it being understood that the total amount of this contract, $32,000.00 is the sum you agree to pay for the work specified, subject only to the following modifications:

"It is understood that if after your acceptance of same

we find by our regular computation of the cost to us of the completion of the work that our profit above the cost so determined is in excess of the percentage agreed to as a limit, we will allow you a credit of such excess in reduction of the amount named above.

" We have no allowance on our estimating sheets for any items not called for in the specification, and any such items that may be desired will be estimated on, and the estimate if accepted, will be made the basis of an additional charge.

" Kindly file this with your specifications, and oblige,

                    " Yours respectfully,
" Form 87.                    · HOGGSON BROTHERS,
                              C. D. GRISWOLD."

Thereafter the defendant accepted contracts for a garage and farm house at $10,000 and these were followed by a contract for a barn for $7,000.

Reverting to the house contract which, as already stated, is the type of all, the main question to be determined is whether the plaintiff should have been allowed to include in its estimate of the cost of the work certain overhead expenses incurred by it in performing that work.

At the trial the court allowed the plaintiff to introduce evidence of these overhead expenses incurred in its business and claimed by it to be properly a part of the cost of carrying out these various contracts. But on motion of the defendant and over plaintiff's objection all this evidence was afterwards stricken out as inadmissible under the terms of the contract, and the plaintiff excepted. The court also struck out evidence of the cost of doing over work on the house in November and December, 1912, and January, 1913. This work was admittedly bad work and the plaintiff sought to include the cost of doing over this work in his estimate of cost, together with the overhead charges properly apportionable to that work.

We may say right here that there is no warrant in law for allowing the plaintiff to include the expense of doing over his negligent work in his estimate of cost, though he should be allowed to include therein the cost of doing it right originally.

The trial court construed the contracts and came to the con-

clusion that under their terms the plaintiff should not be allowed to include any overhead charges whatever in its estimate of cost. This necessitated the dismissal of the complaint, as without the evidence of overhead expenses the plaintiff could not show any balance due it from the defendant.

The contract is so made that the owner is protected against paying more than a designated price, in this case $32,000, for his house. He will pay less than that price if the *cost to the plaintiff* plus ten per cent profit is less than the stipulated sum of $32,000. He was to get a rebate equal to the difference between $32,000 and this cost to the plaintiff plus ten per cent profit.

What then is the meaning of the words, "Cost to us" as used in this contract? Defendant claims, and the trial court so held, that they refer to the sum the contractor paid for the material and labor exclusive of overhead charges. The plaintiff claims that they mean, and were so understood by both parties to mean, a due proportion of overhead charges in addition to amounts paid for such services and material. We think the latter construction is right and obviously so. The real cost to plaintiff of doing the work, in the nature of things, would not be ascertained unless some part of the ordinary charges of maintaining its establishment for carrying on their business was given consideration. And there is evidence in the case that defendant himself understood that in the estimate of cost to the plaintiff its overhead charges were to be included that way. The manager of one of the plaintiff's departments, Mr. Smith, testified that according to his recollection the defendant in an interview preceding the making of the contract asked what "cost" meant as used in the contract and he told him that it included the cost of doing business.

We, therefore, think that the court erred in its construction of this contract and that it was error to strike out the testimony as to the overhead charges. By the terms of the contract the plaintiff was to have a profit of ten per cent. If it was to get only ten per cent of the amount paid for material and labor, its profits might be materially reduced if not eaten up entirely by proportionate overhead charges. Such a result was not contemplated by either party. It was intended that

plaintiff should have a real profit, not a mere chance of a profit.

The defendant claims that the plaintiff cannot recover in this form of action, that is, an action upon general account, but must bring its action on each separate contract. These different contracts all related to the development of the defendant's estate at Greenwich. He made payments from time to time, as he himself stated, on account, and the evidence shows that he treated the matter as one transaction which was to cost him a certain sum, and he paid certain large sums in even amounts from time to time in partial discharge of his whole obligations under all the contracts without designating any particular contract. It appears clearly from the correspondence between them that both parties considered that there was a general account between them flowing out of the several contracts, and that they agreed to treat the matter as a general account between them, and for this reason the form of the action is proper.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.