THE CHARLES BEHLEN SONS' CO. *v.* RICKETTS.

(Decided March 12, 1928.)

*Mr. Samuel Rotter,* for plaintiff in error.
*Messrs. Miller & Elston,* for defendant in error.

MILLS, J.   Edwin A. Ricketts sued the Behlen Company in the court of common pleas for $2,390.07 and interest from July 31, 1923, alleged to be due him on a contract.

The contract was evidenced by a written offer and acceptance, reading as follows:

"Mr. E. A. Ricketts, Cincinnati, Ohio.

"Dear Sir:

"We hereby confirm our conversation of the 9th in connection with the position as Sales Manager of our Gasoline Car Department.

"We hereby offer you the position as Sales Manager of our Gasoline Car Department for a trial period of six months beginning February 1, 1923, your salary to be $50.00 a week and $33\frac{1}{3}$% of the profits accruing from the sale of gasoline cars and gasoline car accessories. At the expiration of six months, salary is to be adjusted on the basis of the showing made for the preceding six months.

"In figuring the percentage of profit accruing to you, same to be figured on the basis of gross sales of gasoline cars and gasoline car accessories, as no overhead such as rent, light, heat, storage, repairs or service is to be taken into account as these items are now being taken care of by our Electric Car Department.

"Your acceptance of this letter to constitute a contract between us.

"The Chas. Behlen Sons Co.,
"John W. Hill, Sec'y.

"Date, Jan. 11, 1923.

"Accepted: E. A. Ricketts."

The petition averred that Ricketts had performed his part of the contract for the six months beginning February 1, 1923; that he had received no part of the stipulated compensation except the fixed weekly salary of $50; that the profits of the gasoline car department had been $7,170.20; and that his third of said profits was $2,390.07.

The company answered, claiming that the profits

of the gasoline car department were only $673.77, of which plaintiff's share was only $234.59; against which the company set up a counterclaim of $75 by way of damages for the plaintiff's misrepresentation of a car to a customer—leaving an admitted indebtedness of $149.59 and no more.

The reply denied the facts set forth in the counterclaim, and reaffirmed the allegations of the petition.

The two questions at issue were: The validity of the counterclaim, and the amount which Ricketts was entitled to receive as his share of the "profits accruing from the sale of gasoline cars, and gasoline car accessories" during the period of his employment. On the issue of misrepresentation of a car to a customer, the company failed to produce any evidence; and the court properly charged the jury to disregard the counterclaim. *Lewistown Foundry & Machine Co.* v. *Hartford Stone Co.,* 92 Ohio St., 76, 110 N. E., 515.

On the remaining issue the evidence covered the period extending to August 13, and it seems to be conceded that the actual employment of Ricketts continued at least until August 10. No objection has been interposed on the ground of any variance in this regard.

The record shows that the gasoline car department sold new and used cars at a total sale price that was $7,906.13 in excess of the total first cost of the cars that were sold; and that the only items of expense charged against that department on the books of the company were freight, advertising, gasoline, and salesmen's commissions, aggregating $2,555.53, and salary paid to Ricketts, $1,275. The

foregoing figures would indicate a net profit of $4,075.60, of which Ricketts should have received $1,355.20; but the jury, on December 6, 1926, returned a verdict for $2,601.36, which was equivalent to $2,170.07 and interest thereon from August 13, 1923, to the date of the verdict.

After the company had moved for a new trial, Ricketts consented to a remittitur of $478.16; and the trial court, on February 23, 1927, entered a judgment in favor of Ricketts for $2,123.20, which was equivalent to $1,752.54 and interest thereon from August 13, 1923, to the date of the judgment.

The company claims that the judgment is excessive and is contrary to the law and the evidence; that the trial court erred in its charge to the jury; and that certain evidence in behalf of the company was improperly excluded.

The trial court left the construction of this contract to the jury, with the instruction that they were to determine whether Ricketts was to receive "one-third of the gross profits or one-third of the net profits" on the sales of gasoline cars and gasoline car accessories. See 6 Ruling Case Law, "Contracts," p. 862, Section 249.

The validity of this contract was not in dispute. Its construction depended upon the language used, and upon undisputed facts. Under the rule in Ohio its construction was for the court. 4 Page on Contracts (2d Ed.), Section 2062; *Dayton* v. *Hooglund,* 39 Ohio St., 671; *Monnett* v. *Monnett,* 46 Ohio St., 30, 17 N. E., 659; *Mosier* v. *Parry,* 60 Ohio St., 388, 54 N. E., 364; *Huntington & Finke Co.* v. *Lake Erie Lumber & Supply Co.,* 109 Ohio St., 488, 143 N. E., 132; *Miller* v. *Blockberger,* 111 Ohio St., 798, 146 N. E., 206.

It is in evidence that the contract, though purporting to originate with the company, was actually drawn by Ricketts. It should therefore be construed most strongly against him. In *Noonan* v. *Bradley,* 9 Wall., 394, at page 407, 19 L. Ed., 757, Mr. Justice Field, stated the following principle:

"A party, who takes an agreement prepared by another, and upon its faith incurs obligations or parts with his property, should have a construction given to the instrument favorable to him."

This principle was similarly stated by Mr. Justice Harlan in *First Natl. Bank* v. *Ins. Co.,* 95 U. S., 673, 679, 24 L. Ed., 563.

Judge Shiras, in *Wilson* v. *Cooper* (C. C.), 95 F., 625, 628, says:

"Where one party prepares the contract and the other accepts it as thus prepared, if there is doubt as to the construction of any of the clauses therein contained, the interpretation must be against the party who prepared the contract."

This principle, expressed in the maxim *"verba fortius accipiuntur contra proferentem,"* was recognized in *Snapp & Hanger* v. *Mer. & Manu. Ins Co.,* 8 Ohio St., 458, 465.

Another legal principle governing the interpretation of this contract has been stated as follows:

"By a very familiar rule for the construction of contracts, every word in the agreement must be taken to have been used for a purpose, and no word be rejected as mere surplusage if we can discover any reasonable purpose thereof which can be gathered from the whole instrument." *Ullman* v. *Chicago & N. W. Ry. Co.,* 112 Wis., 150, 88 N. W., 41, 56 L. R. A., 246, 88 Am. St. Rep., 949.

"It is a general principle, that no word in a contract is to be treated as a redundancy, if any meaning, reasonable and consistent with other parts, can be given to it." *Heywood* v. *Heywood*, 42 Me., 229, 233, 66 Am. Dec., 277.

See, also, 6 Ruling Case Law, "Contracts," 238, Section 227.

Counsel for Ricketts claim that the words "gross sales" should be construed to mean "gross profits," and that so construed they are of controlling importance, and would have the effect of giving to Ricketts one-third of the difference between the first cost of each car and the sale price, regardless of any commission paid to the salesman who sold that car, and regardless of any expense incurred for transporting that car to market. But such a construction would destroy the meaning and effect of the phrase "no such overhead" and of the clause "these items are now being taken care of by our Electric Car Department." To secure to himself one-third of the gross profits, it was incumbent on the plaintiff below to so stipulate. This, we think, he did not do.

The gasoline car department was in a sense a separate entity. It will be presumed that the company would not regard that entity a source of profit until after all the expenses directly caused by its operation had been paid. This consideration seems especially pertinent in resolving any doubt that might otherwise exist as to whether, under the provisions of this contract, the expenses for freight, gasoline, salesmen's commissions, and the salary of Ricketts should be charged against the gasoline car department before calculating the share that Ricketts should receive from the profits of the gaso-

line car department. The construction for which Ricketts contends might easily have resulted in his receiving not only his salary, but also a premium for conducting his department at an actual loss to the company.

"A construction which makes the contract fair and reasonable will be preferred to one which leads to harsh or unreasonable results." 2 Williston on Contracts, Section 620.

"Where the language of the agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unusual, unfair, or improbable contract." *Leschen & Sons Rope Co.* v. *Mayflower Gold Mining & Reduction Co.* (C. C. A.), 173 F., 855, 35 L. R. A. (N. S.), 1.

"A court will endeavor to give the construction most equitable to both parties instead of the construction which will give one of them an unfair and unreasonable advantage over the other." *Fleischman* v. *Furgueson, Exr.*, 223 N. Y., 235, 241, 119 N. E., 400, 402.

"A contract of doubtful meaning will be given a construction which will make it reasonable and fair between the parties and will not give one party an unfair advantage of another." *Mecartney* v. *Guardian Trust Co.*, 274 Mo., 224, 238, 202 S. W., 1131, 1134.

The company claims that the contract requires the gasoline car department to pay not only its own separate expenses, but also its proportional share (to be apportioned in some unexplained manner) of the general and unallocated expenses of the entire business of the company, other than those that come strictly within the headings of "rent, light, heat, storage, repairs, and service." This claim is based upon the legal maxim, *"Expressio unius exclusio est alterius."* *Bricker* v. *Bricker,* 11 Ohio St., 240, 246; *Johnson* v. *Jordan,* 43 Mass. (2 Metc.), 234, 241, 37 Am. Dec., 85. Of this maxim, as applied to a statute, Mr. Justice Van Devanter, in *United States* v. *Barnes,* 222 U. S., 513, 32 S. Ct., 117, 56 L. Ed., 291, says:

"The maxim invoked expresses a rule of construction, not of substantive law, and serves only as an aid in discovering the legislative intent when that is not otherwise manifest: In such instances it is of deciding importance; in others, not."

We are of opinion that this maxim has no application to the case before us, for the reason that the context, especially when viewed in the light of the subject-matter, the situation of the parties, and the circumstances surrounding the transaction, offers sufficient aid in construing the contract. *Mosier* v. *Parry, supra.*

The word "overhead" was doubtless used in this contract as a noun, equivalent to the two words "overhead charges," or "overhead expenses." These two words when used in accounting are defined in Webster's Collegiate Dictionary as comprising:

"Those general charges, expenses, etc., in any

business which cannot be charged up as belonging exclusively to any particular part of the work or product, as where different kinds of goods are made —called also, fixed charges.''

The Practical Standard Dictionary gives the following definition to the word ''overhead'' when used in commercial accounting:

''Denoting such general expenditure in a financial or industrial enterprise as cannot be attributed to any one department or product, excluding cost of materials, labor and selling; fixed charges.''

According to the foregoing definitions, the freight on each gasoline car and the commission paid for selling that car would not ordinarily be regarded as ''overhead'' expense, and there is no evidence that either of them should here be treated as part of the ''overhead.'' The expense for advertising the gasoline cars, the cost of gasoline for use in those cars, and the salary paid Ricketts would appear to be ''overhead'' only in the sense that they could not be attributed or allocated to any one car. As between the two departments these last three classes of expense were not ''overhead,'' since they were attributable wholly to the gasoline car department.

To the word ''such,'' the Century Dictionary gives this definition:

''Of that kind; of the like kind or degree; like; similar.''

Webster's International Dictionary and the Standard Dictionary furnish almost identical definitions.

In *Harris* v. *Nashville, C. & St. L. Ry. Co.,* 153 Ala., 139, 44 So., 962, 14 L. R. A. (N. S.), 261, the phrase ''such as'' was under consideration, in the

interpretation of a statute the pertinent parts of which specified the duties of a railway locomotive engineer, as follows:

"He must also, upon perceiving any obstruction on the track, use all means within his power, known to skillful engineers, such as applying brakes and reversing engine, in order to stop the train."

The opinion, speaking for the majority of the court, there says:

"We understand the statute to require the doing of all things known to skillful engineers to stop the train, but that to apply the brakes and reverse the engine is simply suggestive, not mandatory."

In the contract now before us the words "such as" would, apart from any extraneous evidence, seem to have a natural and reasonable connection with all the words that follow down to the end of the sentence which closes with the expression "as these items are now being taken care of by our Electric Car Department."

We conclude that the phrase "such as" should be here construed to mean "similar to;" that the list of specified examples of "overhead" should not be regarded as a complete or exhaustive catalogue of the excluded kinds of overhead; and that the context calls for reference to the accounting practice of the company as an aid in determining what "overhead" expenses should be charged against the gasoline car department. The evidence further elucidates this latter connection, for we have the following testimony from a witness who had been the company's bookkeeper for the seven years prior to and including the period when Ricketts was manager of the gasoline car department:

"Q. How did you figure or enter on your books the expenses solely for the gasoline car department?

"A. We could not do that because we did not keep expenses separately. Now for Mr. Ricketts we did because that was his salary, but we did not with expenses generally."

It seems plain to us that the parties contracted with the understanding that the system of accounting that had previously been followed should continue to be in force, in so far as it affected the relations between the gasoline car department and the electric car department.

Taking all the foregoing considerations into account, we are of opinion that by the terms of this contract Ricketts, though receiving $50 a week in any case, was not to receive any share of the profits from the sale of gasoline cars until after the payment by the gasoline car department of his own salary, the commissions for the sale of gasoline cars, the freight on the gasoline cars that were sold, and the advertising and gasoline required for the gasoline car department.

It is complained that the trial court erred in refusing to permit witnesses to answer certain questions. No formal proffer was made after any of these rulings on the evidence; and prejudicial error cannot be presumed. *Neff* v. *Cincinnati,* 32 Ohio St., 215; *Bean* v. *Green,* 33 Ohio St., 444. Besides, it appears that in each instance the question was intended to elicit an answer relating to expenditures not, in our opinion, chargeable in whole or in part against the gasoline car department. The rulings in question could not, therefore, be prejudicial.

Since the material issues in this case were estab-

lished beyond dispute, it was the duty of the trial court to direct a verdict; that verdict, if responsive to the decision and direction of the court, became the action, not of the jury, but of the court. *Webb v. Bond & Share Co.*, 115 Ohio St., 247, 153 N. E., 289, 48 A. L. R., 1176; *Cincinnati Gas & Electric Co. v. Archdeacon, Admr.*, 80 Ohio St., 27, 88 N. E., 125; *Bassenhorst v. Wilby*, 45 Ohio St., 333, 13 N. E., 75.

The judgment was, in our opinion, excessive, and we hold that the trial court erred in leaving to the jury the construction of the contract; but the errors will be cured by the judgment that will be entered here.

In accordance with the above conclusions, and coming now to do that which the trial court should have done we order that the judgment against the Charles Behlen Sons' Company in favor of Ricketts be reduced to $1,355.20 and interest thereon from August 13, 1923; and that the judgment of the court below as so modified be affirmed.

*Judgment modified and affirmed.*

HAMILTON, P. J., and CUSHING, J., concur.