HENRY B. HOUSE, ET AL. *v.* WALTER S. FISSELL, ET AL.

[No. 89, October Term, 1946.]

*Decided March 19, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*W. Herbert Mellor* and *William Henry Forsythe* for the appellants.

*John L. Clark* and *James Macgill,* with whom was *J. E. Bindeman* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

Henry B. House and Carroll M. House, partners trading as Henry House & Sons, building contractors, instituted this suit in the Circuit Court for Howard County to enforce a mechanics' lien against Walter S. Fissell and his daughters, Leone E. Fissell and Hattye F. Colbert.

Complainants are brothers residing in Ellicott City. They allege in their bill of complaint: (1) That they agreed to build a three-story building for defendants in Ellicott City, and to furnish all materials and labor necessary for its erection, and were to be paid on a cost-plus basis; (2) that they completed the work on February 7, 1945, and although their claim is overdue, defendants have refused to pay the same; and (3) that on July 21, 1945, complainants filed their claim for $9,238.51 as a lien against the property, setting forth the materials furnished and the labor performed, including overhead expenses in connection therewith and their 5 per cent. profit.

The chancellor allowed complainants $8,351.31 for materials, $4,542.29 for their own labor, and $4,253.08 for other workmen, making a total of $17,146.68. As defendants had paid $11,626.84 on account, the chancellor allowed a lien for $5,519.84, and decreed that unless defendants paid that amount, with interest from July 21, 1945, the property should be sold by trustees. Complainants have appealed from that decree.

The first contention of complainants is that the chancellor should have allowed each of them $1.75 instead of $1.43¾ per hour. It was found that Henry had worked 1,477.86 hours, and Carroll 1,682 hours. They claim that the chancellor should have allowed them $987.46 more than he did. The contract between the parties was not in writing, and there was no definite agreement as to wages. Where no definite wage is agreed upon in a building contract, the wage to which the builders are

entitled is the reasonable value of the work done. *Jackson v. Davey Tree Expert Co.*, 134 Md. 230, 236, 106 A. 571; *Bates v. St. Anthony's Church of South Omaha,* 111 Neb. 426, 196 N. W. 638. It appears that the highest wage paid by complainants to any carpenter employed by them on this building was $1 per hour, or $8 for an eight-hour day. Another carpenter was paid $6 and afterwards $7. Another was paid $5 and afterwards $6. Defendants produced an expert who testified that the maximum wage for carpenters in the area between Baltimore and Frederick was $1.43¾ per hour, or $11.50 for an eight-hour day. As the carpenters employed by complainants were paid between $5 and $8 per day, we hold that the allowance of $11.50 per day for complainants is sufficient. It is true that they had the responsibility of erecting the house; however, they receive 5 per cent. profit, which the other carpenters do not receive. They also insisted that they acted as foremen. We do not question that a lien may be secured under the Mechanics' Lien Law for superintending the construction of a building. *Breeding v. Melson,* 4 W. W. Harr., Del., 9, 143 A. 23, 60 A. L. R. 1252. But in this case the contractors usually had only two carpenters working for them, and never had more than three. In the court below a contractor of long experience testified that he would not need two foremen on a construction job unless he had 50 or 100 men working for him, and that if he had only two or three men, he would be the foreman himself. We see no reason to disturb the chancellor's allowance of $1.43¾ per hour.

The second contention is that the chancellor should have allowed the "overhead expenses." This claim was originally for $1,504.38, but was reduced to $1,149.38 to cover the following items: (1) Workmen's compensation insurance, $149.40; (2) fire and public liability insurance, $162.68; (3) gasoline and oil used in the trucks for hauling materials to the building, $397.30; (4) rental for storage of lumber, $125; and (5) preparing plans, $315. Ordinarily general overhead charges should not

be allowed as a part of the compensation of a contractor employed under a cost-plus contract. General overhead expenses are expenses which are incurred in connection with the general operation of a business, and are not charged exclusively to any particular department or project. *Charles Behlen Sons' Co. v. Ricketts,* 30 Ohio App. 167, 164 N. E. 436, 439; *Guillot v. State Highway Commission of Montana,* 102 Mont. 149, 56 P. 2d 1072, 1075. Thus it has been specifically held that executive salaries, rents, interest charges, depreciation, taxes and general office expenses cannot be allowed a contractor under a cost-plus provision. *Lytle, Campbell & Co. v. Somers, Fitler & Todd Co.,* 276 Pa. 409, 120 A. 409, 27 A. L. R. 41. In *Whicher Development Corporation v. Ross,* 142 Md. 522, 121 A. 372, where the appellant argued that premiums for workmen's compensation insurance cannot be included in a mechanics' lien, the Court found it unnecessary to decide the question. We now hold that a building contractor is entitled to receive as compensation under a cost-plus contract the agreed percentage of the amount actually spent for labor, materials and supplies which he has furnished and which become a part of the finished product within the terms of the contract, premiums for workmen's compensation and liability insurance incurred under the terms of the contract, and hauling, storage, and other operating expenses occasioned by use of equipment. *Johnson v. Kusminsky,* 287 Pa. 425, 135 A. 220; *Citizens State Bank of Long Beach v. Gentry,* 20 Cal. App. 2d 415, 67 P. 2d 364.

We therefore hold that complainants should be allowed $149.40 for workmen's compensation insurance, $162.68 for fire and public liability insurance, and $397.30 for gasoline and oil. These expenses were incurred in connection with the building of the house. The Maryland Mechanics' Lien Law provides that every building erected, and every building repaired, rebuilt or improved to the extent of one-fourth its value, shall be subject to a lien for the payment of all debts contracted for work done and for materials furnished for or about the same. Laws of 1943, Ch. 982; Code, Supp. 1943, Art.

63, Sec. 1.   While gasoline and oil used in trucks for hauling materials do not constitute materials within the meaning of the statute, their cost may be brought within the statute as debts contracted for work done for or about the building.   *Gill v. Mullan*, 140 Md. 1, 116 A. 563; *Fidelity & Deposit Co. v. Mattingly Lumber Co.*, 176 Md. 217, 225, 4 A. 2d 447.   The claim for storage of lumber, however, was properly disallowed. Complainants did not pay any rental for the storage of lumber, but stored it in their own property.   Nor did complainants pay anything for plans for the house.   Complainants are not registered architects.   The Code provides that only properly qualified persons shall hold themselves out as architects or use the designation of architect in the State of Maryland.   Code, 1939, Art. 43, Secs. 457-470.   Henry B. House stated on the witness stand: "I didn't charge them one penny for the plans.   Any architect in the United States would have charged them 5 per cent of the total cost of building for those plans. I didn't charge them one nickel for those plans."   Under these circumstances the claim for preparation of plans was properly disallowed.

The third contention is that the chancellor should have allowed the 5 per cent. profit on the cost of construction. The chancellor did not question that complainants were entitled to 5 per cent., but he ruled that it does not come within the purview of the statute.   A mechanics' lien exists only by virtue of the statute, and there can be no lien for anything that does not fall within the statutory provision.   *Kenly, Use of Otto v. Sisters of Charity of St. Joseph*, 63 Md. 306; *Wilson v. Simon*, 91 Md. 1, 45 A. 1022, 80 Am. St. Rep. 427.   It is also recognized that where lienable and non-lienable items are included in one contract for a specific sum, and it cannot be seen from the contract what proportion is chargeable to each, the benefit of the mechanics' lien law is lost.   *Evans Marble Co. v. International Trust Co.*, 101 Md. 210, 215, 60 A. 667, 109 Am. St. Rep. 568, 4 Ann. Cas. 831.   But we see no reason why a contractor should be denied a lien for his profit under a cost-plus contract, and be compelled

to resort to a different proceeding in order to collect it. We adopt the generally accepted rule that a builder may recover his profit on both labor and material under a cost-plus contract by means of a mechanics' lien. *Fyfe v. Sound Development Co.*, 235 N. Y. 266, 139 N. E. 263, 26 A. L. R. 1325; *Johnson v. Kusminsky*, 287 Pa. 425, 135 A. 220, 222.

For these reasons we must remand the case to enable the chancellor to modify the decree so as to allow complainants their claims for the amounts paid for insurance premiums and for gasoline and oil, and also their claim for 5 per cent. profit.

> *Decree affirmed in part and reversed in part, and case remanded for modification of the decree in accordance with this opinion, with costs to appellants.*