Milton Alpebt, J.
Claimant contracted with the State of New York through its Department of Transportation to reconstruct a portion of Route 22 in Clinton County. Included in the proposed project was the repair and widening of the existing bridge across the Little Ausable River. The contract, identified as RC 69-125, was executed by the claimant on November 4, 1969 and the State Comptroller approved on November 10, 1969. Work on the project was to commence by December 8, 1969. However, by reason of need for more time for the State to acquire certain key properties required for the project, claimant requested a commencement date of June 1, 1970 which was granted.
In early February of 1970, claimant made a further detailed examination of the under-portion of the bridge, the examination being feasible then by reason of the fact that the river was frozen and the engineers could walk upon the frozen surface. The examination disclosed that the cracks and voids visible in the undersurface of the bridge appeared to be more extensive than those which were contemplated to be repaired pursuant to the contract. Claimant thereupon advised the Department of Transportation by letter dated February 10, 1970, of the results of claimant’s examination. The Department of Transportation, by letter dated February 20,1970, acknowledged the findings and advised claimant to do nothing further until the department evaluated the situation; this was confirmed by another letter dated March 3,1970. On April 9,1970, the claimant was notified by the Commissioner of Transportation that the contract was terminated.
The claimant thereafter brought the instant claim alleging an improper termination and breach of contract and seeking $41,742.65, together with interest, in damages as its losses occasioned by the contract breach.
The claim was timely filed on the sixth day of May, 1970 with the Clerk of the Court of Claims and with the Attorney-General and has not been assigned or submitted to any other court or tribunal for audit or determination.
Claimant contended that by reason of the contract termination, it was deprived of its profit to be earned by the contract in the amount of $24,884, that being the difference between the bid price of $234,627 and its estimated actual cost of the project of $209,743. In addition, claimant claimed that it incurred prebid costs in the amount of $2,115.63; and that it had a number of post-bid expenses in the form of “ start up ” 'expenses *777 incurred prior to the notice of cancellation which will be treated in detail in this decision.
At the outset, the court disallows the sum of $2,115,63 representing the prebid costs as these are not considered elements of damages. The costs were incurred whether or not the claimant would be the successful bidder, and they have no relationship to the breach by the defendant.
The general rule is that where no payments on account have been made, a contractor who is not in default should recover the total price promised less the cost of performing, in case no work has been done, or of completing performance of the work, where there has been partial performance (Long Is. Contr. & Supply Co. v. City of New York, 204 N. Y. 73; 11 Williston, Contracts [3d- ed.], § 1363). Thus, it would appear that the claimant in the instant claim is entitled to reimbursement for the fair and reasonable value of the work it performed under the contract prior to termination and to the profits it would have realized by performing the entire contract.
The post-bid expenses or “start.up” expenses claimed by the claimant consisted of executive time expended in visiting the site, in conferring with representatives of the Department of Transportation and with representatives of the community wherein the construction was to take place; travel expense; insurance premiums; purchase of equipment; a share of the home office or base-operations costs; rental of certain heavy equipment, and photographs. To this was added 10% for “ general overhead.”
Based on the claim and other papers involved, exhibits in evidence, and testimony at the trial, the court’s findings as to various damage items claimed are as follows:
1. PROFIT
1‘ If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damages, namely: first, what he has already expended toward performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract ” (Long Is. Contr. & Supply Co. v. City of New York, 204 N. Y. 73, 82, supra). To be recoverable, profits must not be too remote and speculative in their character. However, “ The impossibility of establishing a precise formula for computing damages should not foreclose the claimants’ clear right to recover. (Westcott v. State of New York, 264 App. Div. *778 463.) If the trial court’s apportionment of liability can be reasonably supported by the record, it should not be disturbed. (Johnson, Drake & Piper v. State of New York, 31A D 2d 980.) ” (Rusciano Constr. Corp. v. State of New York, 37 A D 2d 745, 747.)
The published estimate by the State’s engineer for this project was $242,000; and his actual estimate was $233,757. Claimant’s successful bid was $234,627 and that of the other bidder was $235,056, both bids being well within the realm of the State’s estimate of the project cost. Furthermore, claimant is an established construction firm, experienced in heavy public construction work in the State of New York and a firm acceptable as responsible by the Department of Transportation of the State of New York, having previously been awarded construction contracts, and having been awarded the instant contract.
Claimant’s proposed cost figures are set forth in claimant’s Exhibit 8 in evidence. The profit item of $24,884 is a little above 10% of the bid and contract price. The court finds that the claimant’s bid was fair and reasonable and that its estimated profit item of $24,884 is neither remote nor speculative. The sum is ascertainable from the fixed bid price and the detailed proposed cost figures for performing the contract and is not based on the conjecture, estimate, guesswork or speculation of the type considered and rejected in Broadway Photoplay Co. v. World Film Corp. (225 N. Y. 104); Cramer v. Grand Rapids Show Case Co. (223 N. Y. 63), and Walter Janvier Inc. v. Baker (229 App. Div. 679). The sum for estimated profit is readily ascertainable, is fair and reasonable and, accordingly, is allowed by the court.
2. POST-BID EXPENSES
a. Salaries and Fringe Benefits.
A total of $3,705.25 was claimed for working time devoted to this project by six officers and employees plus $629.89 and $296.42 for various fringe benefits. The court finds these estimates to be fair and reasonable and allows them for a total of $4,631.56.
b. Preconstruction Conferences.
A total of $436.50 was claimed for travel expenses for such conferences. The court finds this estimate to be fair and reasonable and allows the same for $436.50.
c. Photographs.
The expenditure here was $42 which the court allows as fair and reasonable.
*779 d. Insurance Premiums.
A total of $1,814 was claimed here but not pressed because claimant was given full credit for this amount by its insurance carriers. The court makes no allowance here.
e. Equipment Purchased.
Here, a total of $3,773.11 was expended for a traffic control system, watchman’s clock, and gunite equipment including freight for the latter. Fifty per cent of these expenditures was claimed by claimant. This percentage allowance was questioned by the State. The court finds that these items can be utilized at other projects undertaken by the claimant and finds that 25% would be a fair and reasonable allowance here. Accordingly, the court allows $943.28 as a fair and reasonable allocation to the instant contract.
f. Cancellation Charge.
The expenditure here was $75 which the court allows as fair and reasonable.
g. Printing Charge.
The expenditure here was $25.44 for printing the claim. This is not reimbursable here and is disallowed by the court.
h. Pro Bata Share of Base Operations.
Based on an estimate that this contract represented 31% of anticipated yearly volume, claimant’s 1969 expenditures and the 22%-week period from date of contract award to date of termination of the contract, it was estimated that $6,225.75 representing 31% of the cost of operating the home office, yard, shop, warehouses, and the like was allocable to the instant contract. At the trial this sum was increased to $7,604.55. The court disallows this item based on the reasoning set forth in item k below where an allowance is made for overhead.
i. Heavy Equipment.
Claimant’s claim for standby of this equipment for the three months is $6,750, based on A. E. D. (Associated Equipment Distribution) rates, 20% of such rates being taken as an appropriate allocation for standby. A witness on behalf of the claimant testified that he thought this was for January, February, and March, 1970. Claimant, however, rented all its heavy equipment on an annual basis for $75,000 per year with an obligation on itself to maintain, repair, service and operate the same. This rental fee, rather than A. E. D. rates not used by the parties to the rental agreement, should form the foundation for any allocable charges to the instant contract.
However, prior to the directed contract work commencement date of December 8,1969 and at claimant’s request dated Decern *780 her 5, 1969, the starting date was, by letter dated December 8, 1969, extended by the State to June 1, 1970. Thus, there was no reason or purpose for claimant to have standby equipment during January, February, and March, 1970 assigned for work on the instant contract. The claim, with respect to standby equipment, accordingly, is disallowed.
j. Cost of Winterizing Another Project.
A total of $10,079.01 was claimed for this item in order that the claimant would be able to devote its efforts to the instant contract. But, shortly after being awarded the instant contract the claimant requested that the commencement date under the instant contract be extended from December, 1969 to June, 1970 (see details in paragraph i above). Claimant did not press its claim for this winterizing item at the trial and the court makes no allowance therefor.
k. Claim for Overhead.
Here, 10% of the total request for reimbursement, exclusive of anticipated, profit, was added for overhead. The amount so specified was $3,596.80.
The court finds that an allowance for overhead on the claimed 10% basis related to project costs should be made here. The ordinary charges of maintaining the establishment for the carrying on of business are referred to as overhead (Hoggson Bros. v. Spiekerman, 175 App. Div. 144, 149; Leonard v. Frantz Co., 268 App. Div. 144). The general view is that overhead is not included in the cost of the project unless so specified (N. Y. Jur., Contracts, § 281, p. 223), and is usually computed as a percentile of the over-all cost of the project. Accordingly, the court will make such an allowance in this award. The court notes that items a and b above relate to specific operating expenses and have been allowed in addition to the instant item of overhead.
The court tabulates the allowable post-bid expenditures as
follows:
a. Salaries and Fringe Benefits.......... $ 4,631.56
b. Pre-Construction Conferences......... 436.50
c. Photographs......................... 42.00
d. Equipment Purchased................ 943.28
e. Cancellation Charge.................. 75.00
Total.............................. $ 6,128.34
To this is added 10% as the overhead cost of $612.83 for a total allowable post-bid expense of $6,741.17.
Claimant demonstrated at the trial that its anticipated cost for the project was a fair, reasonable and acceptable cost and *781 comparable to the cost estimates by the State’s engineer and by the other bidder. The profit envisioned by claimant, approximately 10% of its bid, was fair, reasonable and readily ascertainable and is allowed in the sum of $24,884.
The court, therefore, awards claimant the sum of $31,625 rounded, with interest .thereon from April 9, 1970 to the date of entry of judgment.