968 P.2d 247

**FREEMAN & CO., an Idaho corporation, Plaintiff,**

v.

**Al BOLT, d/b/a Bolt Construction, an individual, Defendant–Appellant–Cross Respondent**

and

**Jack C. Kulm and Jennifer Kulm, husband and wife; and All Persons in Possession or Claiming any Right to Possession, Defendants–Respondents–Cross Appellants.**

**Jack C. KULM and Jennifer Kulm, husband and wife, Counterclaimants–Cross Defendants-Respondents–Cross Appellants,**

v.

**Alvin BOLT, dba Bolt Construction, an individual, Counterdefendant–Cross Claimant–Appellant–Cross Respondent.**

**Alvin BOLT dba Bolt Construction Company, Plaintiff–Appellant–Cross Respondent,**

v.

**Jack C. KULM and Jennifer Kulm, husband and wife, and Freeman & Co., Incorporated, an Idaho corporation, Defendants–Respondents–Cross Appellants.**

No. 23938.

Court of Appeals of Idaho.

Aug. 11, 1998.

Review Denied Oct. 23, 1998.

Lloyd J. Webb, Curtis Webb; Coleman, Ritchie & Robertson, Twin Falls, for appellant-cross respondent. Lloyd J. Webb argued.

Stephan, Kvanvig, Greenwood, Stone & Trainor, Twin Falls, for respondents-cross appellants. Laird B. Stone argued.

SCHWARTZMAN, Judge.

Bolt Construction Company (Bolt) appeals from the district court's decision on a bench trial regarding disputes over a residence which Bolt built for Jack and Jennifer Kulm. The parties disagreed over how to properly calculate and prove "cost" for a "cost plus" contract and whether the charges levied for certain "extra" and "additional" work were correct. Each party prevailed on some of their respective claims, but the district court concluded that the Kulms were the overall prevailing party and awarded them a significant percentage of their attorney fees.

We affirm the decision of the district court, with one minor exception regarding a concession made by the Kulms.

## I. FACTUAL BACKGROUND

In March of 1994, Al Bolt (dba Bolt) entered into a written contract with Jack and Jennifer Kulm for the construction of a residence in rural Jerome County. The contract provided, in relevant part:

Bolt Construction hereby agrees to furnish all the material and perform all the labor necessary for the completion of:

[Home as per plans provided by the Kulms]

All material is guaranteed to be as specified, and the above work to be performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner for the sum of:

Two Hundred Twenty Five Thousand Dollars ($225,000.00)

. . . .

Any additional work required by owner shall be at cost plus 10% unless other arrangements are made prior to the start of such work. Any alteration or deviation from above specifications required by owner involving extra costs will become an extra charge over and above the estimate at the rate of cost plus 15%. Owner to carry fire, tornado, wind, storm and other necessary insurance upon above work. Workmen's compensation and public liability insurance on above work to be taken out by Bolt Construction.

The residence was built, but many problems arose. The Kulms claimed that Bolt did not fulfill the terms of the contract: specifically, that Bolt did not properly perform some of the work, that problems were not cured, and that materials were improperly used.

Furthermore, the contract specified that "additional" work would be billed to the Kulms at "cost" plus 10 percent, and "extra" work would be billed at "cost" plus 15 percent. Nowhere in the contract are the terms "additional," "extra," and "cost" defined, and the parties never held any pre-contract discussion to define or clarify the meaning of these terms. The primary disagreement focused on how to define "cost," that is, which items are properly chargeable by a general contractor in computing its "cost" for a "cost plus" contract.

There was also a claim regarding Freeman & Company, Inc., one of Bolt's subcontractors who installed the dryvit system on the Kulms' house. The Kulms allege that Bolt never fully paid Freeman, and that the Kulms are entitled to reimbursement from Bolt for money they paid to Freeman in settlement of the claim.

Bolt, on the other hand, disputes many of the district court's determinations regarding monetary compensation for specific jobs and alleges that the court erred in its disposition of Bolt's claims regarding these numerous projects. Bolt also argues that the court erred in awarding the Kulms damages for various construction items on their counter-claim.

## II. PROCEDURE

The case began with a complaint filed by Freeman, who brought an action for payment against both Bolt and Kulm as well as a lien against the Kulm property; the Kulms then filed a cross-claim against Bolt alleging that Bolt was responsible for holding them harm-less for any damages resulting from Free-man's mechanic's lien. The Kulms withheld money from the contract price with Bolt based on credits to which the Kulms claimed they were entitled. Bolt then filed suit against the Kulms, and the Kulms counter-claimed. The Kulms further sought an offset for alleged defects in Bolt's performance of the contract. Ultimately, the Freeman claim was settled and he was dropped from the case by agreement of the parties.

The trial was conducted in two phases.[1] The first phase of trial (which concerned mostly Bolt's claims) began on June 27, 1996, and lasted two days. The district court then filed its "Order on Court Trial." In response to the parties' subsequent motions, the dis-trict court also issued an "Order on Motion to Reconsider and Amend Findings of Fact."

The second phase of the trial began on December 11, 1996, and also lasted two days.

The court then filed an "Order on Second Phase of Court Trial: Findings of Fact, Con-clusions of Law." Again, in response to mo-tions by the parties, the court issued an "Order on Motions for Reconsideration; Amend Findings of Fact, Conclusions of Law; and Amend Judgment on Phase II of Court Trial." In all, the district court pre-pared four separate decisions, comprising 162 pages, each *meticulously* detailed, containing an *exhaustive* item by item analysis. The net result of this marathon litigation, after offsets and credits, left the Kulms with a $9,856.85 judgment, together with costs and 75 percent of their attorneys fees.

Bolt appealed and the Kulms filed a notice of cross-appeal.

## III. DISCUSSION

### A. The District Court Properly Deter-mined Which Items Should Be Includ-ed In Calculating "Cost" Under A "Cost Plus" Contract

■ According to the terms of the con-tract, Bolt was entitled to charge the Kulms his "cost" plus 10 percent for "additional" work and "cost" plus 15 percent for "extra" work. Bolt computed an hourly rate to charge for any work done in accordance with these "cost plus" provisions. Bolt provided an itemized breakdown of direct and indirect costs which were all included in calculating how much to charge for each hour per work-er as Bolt's "cost." For every hour worked by a laborer, foreman or welder, Bolt charged the following items to arrive at his "cost."[2]

| | Percentage Of Salary Charged As "Cost" | Laborer |
|---|---|---|
| Wages | —— | $10.00 |
| 1) Work. Comp. | 26.41% | $2.64 |
| 2) Liability Ins. | 2.42% | .42 |
| 3) Health Ins. | 4.60% | .46 |

---

1. At the court's request, and by the agreement of the parties, a portion of the first phase was conducted at the residence in question. The court later conducted another view of the prem-ises in relation to phase two of the trial.

2. The Laborer's salary is provided as part of this graph simply as an example; the *percentage* charge for each item stays the same for the Foremen and Welders, but the *amount* charged would change depending on the salary.

| | | Percentage Of Salary Charged As "Cost" | Laborer |
|---|---|---|---|
| 4) | FICA | 6.20% | .62 |
| 5) | MEDICARE | 1.45% | .15 |
| 6) | State Empl. Ins. | 2.00% | .20 |
| 7) | FUTA | .80% | .20 |
| 8) | Trucks | 10.00% | $1.00 |
| 9) | Equipment | 10.00% | $1.00 |
| 10) | General Operating | 15.00% | $1.50 |
| 11) | Tools | 5.00% | .50 |
| 12) | Repairs | 5.00% | .50 |
| *13)* | *Replacement* | *5.00%* | *.50* |
| **Total** | | **93.88%** | **$19.39** |

Therefore, with regard to "additional" or "extra" work done by a laborer who was paid an hourly wage of $10.00, Bolt billed the Kulms $19.39 an hour, plus 10 percent or 15 percent, respectively. The same items and percentage ratios were charged for work done by welders and foremen, although the actual amount was changed according to the hourly wage.

The district court found that the term "cost" was not defined in the contract, that there was clearly no meeting of the minds as to the parties' definition of "cost," that the term was reasonably subject to more than one interpretation, and that the term did not have a settled legal meaning in Idaho. Thus, the term "cost" as used in the subject contract was ambiguous and would be construed against the contract's author, Bolt. The court interpreted the term "cost" to include only direct costs, or those costs directly associated with the performance of the contract, and excluded additional indirect or overhead costs.[3]

■ The legal meaning and effect of contract terms are questions of law which we review freely. *Holscher v. James*, 124 Idaho 443, 447, 860 P.2d 646, 650 (1993). It is undisputed that the contract was prepared by Bolt and thus any ambiguities may be construed against the drafting party. *Haener v. Ada County Highway Dist.*, 108 Idaho 170, 173, 697 P.2d 1184, 1187 (1985). Additionally, the term "cost" as used in a "cost-plus" contract with respect to the inclusion of overhead (indirect) costs does not have a settled legal meaning in Idaho.[4] As this is an issue of first impression, we will examine the law in other jurisdictions.

We think the better reasoned approach is taken by those cases which follow the majority position regarding the calculation of "cost." The general rule in "cost plus" construction contracts is that overhead is not included within the term "costs" unless the contract so specifies. 17A AM. JUR.2d *Contracts* § 508 (1991 & Supp.1998). This general rule is further delineated in 13 AM. JUR.2d *Building and Construction Contracts* § 20 (1964 & Supp.1998), as follows:

> Under a "cost plus" contract the contractor is entitled to recover his costs plus the agreed percentage. A question arises under these contracts as to what is included in the costs. It has been held that the contractor is not entitled, in addition to the percentage called for in the contract, to charge for his general or overhead expenses, such as salaries, telephone service,

---

**3.** Included as direct costs, in addition to wages, materials and supplies actually furnished, were Workman's Compensation, liability insurance, health insurance, FICA, Medicare, State Employment Insurance, and FUTA, i.e. those costs that comprised a percentage of the wage that the employer was required to pay every time his employee was paid a wage. Thus, item No. 10 (General Operating) was excluded from the computation.

**4.** We use the term "overhead," but in the present context, "overhead" is synonymous with "indirect costs." A distinction is made between direct costs which are specific to the construction project at issue, and "indirect costs," which encompass general costs of business operation and are more generally known as "overhead."

and office supplies, for his own time in superintending the work, for carfare for laborers, for the cost of extra work not called for by the original contract and commissions thereon, or for the cost of doing over the work which was not properly done. On the other hand, he is entitled to charge for materials and supplies furnished, for the wages of workmen, for the salaries of superintendents, and for accident and indemnity insurance.

The cases cited by Bolt notwithstanding, most courts which have addressed this issue have adopted the view that, under a cost-plus contract, a contractor cannot include every conceivable expenditure in calculating cost. *See, e.g., Wymard v. McCloskey & Co.,* 342 F.2d 495, 499 (3rd Cir.1965) ("In [Pennsylvania and Maryland] there are clear, authoritative decisions that an agreement in general terms to pay for a job on a cost plus basis does not impose an obligation to pay anything for general overhead, in addition to whatever percentage of cost may be allowed for profit."); *Smith v. Westervelt,* 356 So.2d 463 (La.Ct.App.1977) (under a cost plus contract, overhead cannot be included in calculating cost; if the contractor's contention were sustained, it would have the effect of converting the contract into a cost plus 20 percent rather than cost plus 10 percent). *Don Nelsen Construction Company v. Landen,* 198 Neb. 533, 253 N.W.2d 849 (1977) (under a cost plus contract, the contractor is not entitled, in addition to the percentage called for in the contract, to charge for general or overhead expenses); *House v. Fissell,* 188 Md. 160, 51 A.2d 669 (1947) (general overhead expenses which are incurred in connection with the operation of a business and are not charged exclusively to any particular department or project should not be allowed as part of the compensation of a contractor employed under a cost plus contract).

One basis for the prevailing view is that the overhead has already been factored into the percentage charge on the costs, that is, in the "plus" portion of the contract:

Under "cost-plus" construction contracts it is generally held the contractor may not include overhead expense as part of the costs unless the contract expressly so provides. An important reason for this seems to be that *the parties evidently intended that percentage payment (usually 10 or 15 percent in addition to labor and material cost) to compensate for the contractor's overhead.*

*Conditioned Air Corp. v. Rock Island Motor Transit Co.,* 253 Iowa 961, 114 N.W.2d 304, 309 (1962) (emphasis added).

An additional rationale for limiting the items to be included in calculating cost is based on the idea that because most parties assume the overhead is not included, if a contractor intends to include overhead as part of its "costs," this must be specifically set forth in the contract. In *Higgins v. Rini, Inc.,* 597 So.2d 1238 (La.Ct.App.1992), the court held that a contractor working on a costplus basis could not charge for insurance, taxes and any other overhead expenses because there had not been a negotiated agreement between the parties that the word "cost" would include such items. *See also Nolop v. Spettel,* 267 Wis. 245, 64 N.W.2d 859 at 863 (1954) ("If overhead expense is to be allowed it must be expressly written into the contract, and the overhead intended to be covered must be defined."); *Foster v. Soule,* 310 So.2d 170, 172 (La.Ct.App.1975) ("[The contractor] has shown no proper basis for the inclusion of the figure attributable to 'insurance and overhead.' Such inclusion would depend upon a negotiated agreement between the parties and [the contractor] neither asserts nor proves that [the owner] agreed to the inclusion of the items as 'costs.'"); *Peru Associates, Inc. v. State of New York,* 70 Misc.2d 775, 334 N.Y.S.2d 772, 780 (N.Y.Ct.Cl.1971), *aff'd without opinion,* 39 A.D.2d 1018, 335 N.Y.S.2d 373 (N.Y.App. Div.1972), ("The general view is that overhead is not included in the cost of the project unless so specified. . . .").

■ Bolt also contends that the district court should have followed his allegedly unrebutted testimony at trial that all thirteen items Bolt requested as "costs" are customarily included within the definition of that term by contractors operating in south central Idaho. Even assuming this to be true, a custom of trade cannot be invoked against a

party not in the same trade. In *Smith v. Westervelt,* the court stated:

[The contractor] took the position that it was "customary" to include an overhead item as costs. No proof of the actual cost of overhead was submitted. [The contractor], also, was equivocal concerning whether he had discussed with [the owner] the inclusion of an additional 10 percent for overhead as an item of costs, stating that he would not swear that he discussed it with [the owner]. Absent evidence of consent by [the owner], whom the record shows to be inexperienced in the building trade, we follow *Osyka Mercantile Co. v. W.F. Klumpp & Co.,* 7 Or.App. 194 (1910), which concluded that custom could not be invoked against a party not in the same trade; and, therefore, [the owner] cannot be presumed to have contracted in reference to it.

356 So.2d at 464; *see also Nordstrom v. Diamond Int'l Corp.,* 109 Idaho 718, 721, 710 P.2d 628, 631 (Ct.App.1985) (citing the general rule that "the custom and practice of a trade become part of a contract *between parties within that trade having knowledge of the custom,* unless the contrary appears.") (emphasis added); 21A AM. JUR.2d *Customs and Usages* § 20 (1964 & Supp.1998) ("Business and trade customs are not binding upon one who is not engaged in the particular trade or business or has never been apprised of its customs and usages, and who is merely seeking specified services."): *cf., Wymard,* 342 F.2d at 499 (holding that "custom cannot prevail over a rule of law that such overhead charges, unless specified in the agreement, are not recoverable under a general promise to pay on a cost plus basis.").

In light of the foregoing authorities, we decline to accomplish by judicial fiat what Bolt neglected to achieve by express contractual provision, and adopt the position that under a cost-plus contract, unless otherwise specified, "cost" does not include general business operating expenses, such as overhead. The district court did not err in excluding this item (No. 10) when calculating Bolt's "cost."

**B. The District Court Correctly Concluded That Bolt Had Not Met Its Burden Of Proof With Regard To Charges For Materials And Overtime Labor Included In Bolt's Computation of "Cost"**

The district court held that expenses for overtime labor, tools and equipment, including replacement and repair of tools and equipment, can qualify as direct costs which may be included in a contractor's computation of "cost." However, because Bolt did not meet its burden of proof as to these items, the court held that Bolt was not entitled to reimbursement for these costs.

The court then explained why these costs were being disallowed:

While tools, trucks, etc., certainly can be characterized as direct costs if in fact used on the specific job, absent a showing that they were actually used on the Kulm job, they become indirect costs.

Specifically, Bolt charged for these "direct costs" based on a percentage ... of the wage paid without regard to whether the tools and equipment were actually used on the job. These charges were not summaries, but rather were averages. Bolt argues that to require an exact accounting of the true direct costs would require an impossible task. This Court agrees that the task would be somewhat onerous. However, Bolt entered into a "cost-plus" contract, without specifying an amount that would be charged for labor. Bolt did not make Kulm aware of the labor breakdown ... either contemporaneously with, or prior to, entering into the contract, or otherwise explain how labor would be calculated. Instead, Bolt opted to use a method which charged for the actual cost of the labor and tools etc., employed, and Kulm agreed. Had Bolt and Kulm agreed on a specific dollar amount for labor, Bolt would have only had to keep track of the hours spent on a particular job, and whether the worker was a laborer or a foreman. This was not done.

The overtime wage actually paid an employee is one of the items normally allowed as part of a contractor's "cost." However, the district court determined that, in this case, Bolt had not properly calculated or

documented his overtime, and thus was not entitled to include charges for overtime as part of his "cost." Accordingly, the court determined that not only did Bolt's overtime formula result in overcharging the Kulms, the formula was also inaccurate because it charged the Kulms for overtime regardless of whether any overtime was performed on the Kulms house, or whether the Kulms requested any work which required Bolt's employees to work overtime.

 In a cost-plus contract, costs must be established by competent proof: The meaning of "costs" is plain and definite in the sense that it denotes *actual* as opposed to average costs. The party performing under a cost-plus contract must keep a record of who worked on a given job and of his hourly wage. Approximations and averages are insufficient. *Arc Electric Co. v. Esslinger-Lefler, Inc.,* 121 Ariz. 501, 591 P.2d 989 (Ct. App.1979). *See also House v. Fissell,* 51 A.2d at 671–72 ("[A] building contractor is entitled to receive as compensation under a cost-plus contract the agreed percentage of the amount actually spent for labor, materials and supplies which he has furnished and which become a part of the finished product within the terms of the contract...."); *Nolop v. Spettel,* 64 N.W.2d at 863–64 ("Actual cost must be based on labor and materials that become a part of the completed work. Actual cost cannot be computed upon the average or proportional part of the cost but must be the exact sum expended.").

We therefore uphold the district court's determination that Bolt failed to meet his burden of demonstrating with particularity the amounts actually paid for overtime, tools and repair and replacement of tools in his calculation of "cost."

## C. The District Court Correctly Determined Various Claims Regarding "Extra" Work

 Bolt alleges that the district court erred in its disposition of several of its claims, specifically, that the district court incorrectly tabulated the amount owed Bolt, or disallowed the claim altogether, with respect to the following items: (1) patio steps, (2) foundation coating and insulation of crawl-space, (3) fireplace trim, (4) slim shades for windows, (5) additional framing, (6) texture master bedroom ceiling, (7) rock work, (8) sheetrock tape and textures, and (9) propane tank and cover.

At oral argument the Kulms conceded they owe Bolt $64.52 for fireplace trim and $250 for work done on the master bedroom ceiling. Bolt will therefore be allowed to offset $314.52 from the final amount owing to the Kulms. However, with regard to the remaining items, we decline to specifically address each claim individually. The district court viewed the premises at issue and conducted portions of the trial there. Thus the court was in a unique position which enabled it to evaluate the facts and evidence firsthand. In *Eisenbarth v. Delp,* 70 Idaho 266 at 270, 215 P.2d 812 at 814 (1950), the Idaho Supreme Court recognized the benefit derived from the trial court viewing the premises at issue: "The learned trial court viewed the premises and, therefore, had the advantage of correlating the evidence to the actual situation on the ground. It was for him to balance the relative situations pro and con, ..., as to the relative convenience, inconvenience, costs and all other pertinent connected facts...."

In addition, after each of the two phases of trial, the district court issued a lengthy order followed by yet another on motion for reconsideration. The court noted the almost overwhelming nature of the multifarious claims at issue, and addressed the fact that the testimony was sometimes vague or conflicting:

In conclusion, the Court acknowledges that the parties unfortunately did not have a good understanding of all of the provisions contained in the contract. These misunderstandings were further complicated by the various representations relating to work intended to be outside of the contract and the fact that nothing relating to the cost of extra or additional work was reduced to writing or thoroughly discussed prior to the work being performed. However, neither party sought to have any of the contractual provisions set aside in order to pursue relief on a quantum merit or equivalent theory. Rather, the parties sought to have the Court construe the

contract and apply the relevant facts. Admittedly, the Court struggled with this task because the testimony was sharply conflicting at times and relatively vague at others. Ultimately, the evidence was not as straight forward as counsel for either side would have the Court believe. However, based on the evidence presented, the Court is required to make factual findings in accordance with the Court's interpretation of the evidence. Accordingly, that was done in this case. Albeit, the Court's interpretation of the evidence may not agree with the interpretations argued by the respective parties on every issue.

■ A trial court's findings of fact will not be reversed unless they are clearly erroneous. I.R.C.P. 52(a). Even if the evidence is conflicting, the trial court's findings of fact will not be disturbed on appeal when they are supported by substantial and competent evidence. *J.E.T. Development v. Dorsey Construction Co., Inc.*, 102 Idaho 863, 864, 642 P.2d 954, 955 (Ct.App.1982). We have reviewed the record, and specifically with regard to Bolt's claims regarding the remaining seven items, we hold that the district court's determination of these claims fits comfortably within the framework of Rule 52(a). The court's findings are not clearly erroneous and will not be secondguessed or disturbed on appeal.[5]

**D. The District Court Properly Granted Cost Of Repair Damages To The Kulms**

■ The district court determined, based upon the number of defects and the costs to remedy, that Bolt partially breached the express and implied warranties of his contract with the Kulms by failing to construct certain parts of the house in a workmanlike manner. However, the court found that there had nonetheless been substantial performance of the contract, since the defects were minor in scope relative to the entire construction; therefore, the Kulms were entitled to some damages.

Bolt contends that the district court improperly granted damages to the Kulms on their counterclaims. Bolt's position, citing, *inter alia, Gilbert v. City of Caldwell,* 112 Idaho 386, 394, 732 P.2d 355, 363 (Ct.App. 1987), is that if the contractor has substantially performed, the owner may be awarded the reasonable costs of remedying any defects only if that cost is not clearly disproportionate to the probable loss in value of the building. The result of this contention is the assertion that because the Kulms did not prove any probable loss in value between the contract price and the value of the building as constructed, the Kulms are entitled to no damages whatsoever.

■ We disagree. The approach urged by Bolt would be unworkable and unrealistic. The Kulms were entitled to the house they contracted for. Bolt never fully completed the home in a workmanlike manner and was given numerous opportunities to complete the work and cure problems. The Kulms are entitled to their "expectation interest," which is defined as their interest in having the benefit of their bargain by being put in as good a position as they would have been in if the contract had been performed. *Brown v. Yacht Club of Coeur d'Alene, Ltd.,* 111 Idaho 195, 198, 722 P.2d 1062, 1065 (Ct.App.1986).

■ The general rule in Idaho is that a contractor may recover the contract price of a structure which substantially conforms to the terms of the contract, less the cost of repairing minor defects in the structure. *Ervin Construction Co. v. Van Orden,* 125 Idaho 695, 702, 874 P.2d 506, 513 (1993). In *Ervin,* the Idaho Supreme Court held that, where a construction contract has been substantially performed, the proper measure of damages is that stated in the RESTATEMENT OF CONTRACTS § 346(1)(a) as follows:

(a) For defective or unfinished construction [the buyer] can get judgment for either (I) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or

---

5. The efforts exerted by the district court in performing such labors in the discharge of its duties exemplifies the term "yeoman's service."

(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the [buyer], if construction and completion in accordance with the contract would involve unreasonable economic waste.

The Court then upheld the cost of repair of defects as the proper measure of damages where the evidence showed that the contract was substantially performed and that the repairs were made without unreasonable economic waste. *Id.*

In the present case, the trial court found that Bolt had "partially breached" the contract by failing to construct certain parts of the house in a workmanlike manner but that there had been substantial performance of the contract, with the defects being "relatively minor in the scope of the entire construction." These findings are well supported by the evidence. Further, there was no evidence that accomplishment of the repairs would involve unreasonable economic waste. Therefore, the trial court correctly awarded damages based upon the cost of repairs, and there was no need for the Kulms to prove the difference in value between the contract price and the value of the house as constructed.

### E. The District Court Properly Denied The Kulms' Claim Against Bolt Regarding Money Paid To The Subcontractor, Freeman

█ In the course of building the Kulm's home, Bolt hired various subcontractors, one of whom was Freeman & Company, to install the "dryvit" system, an acrylic foam insulation fastened to the subframing. The Kulms informed Bolt they were unhappy with the installation of the dryvit because of numerous claimed defects in the installation. Accordingly, Bolt withheld payment to Freeman when it became due. Freeman then filed an action for payment against both Bolt and Kulm as well as a lien against the Kulm property; the Kulms then filed a cross-claim action against Bolt alleging that Bolt was responsible for holding them harmless for any damages resulting from Freeman's lien. The Kulms also withheld money from the contract price with Bolt based on credits to which the Kulms claimed they were entitled, which caused Bolt to file the underlying action in this appeal.

In order to resolve the Freeman claim, Bolt and the Kulms, who were joint defendants in that case, entered into a settlement agreement with Freeman whereby Freeman would be paid $20,620.90 in exchange for settlement of Freeman's claims against Bolt and the Kulms. The district court's order on the second phase of trial notes that the parties stipulated that the Kulms paid $2,310.55 of the $20,620.90 owed to Freeman, and Bolt paid the remaining balance.[6]

One of the Kulms' counterclaims in the instant case was a demand that Bolt reimburse them for the $2,310.55. The Kulms contend on their cross appeal that the district court improperly rejected this claim on the basis of its mistaken belief that the parties waived further recourse in their agreement settling the Freeman claim. However, our review of the court's decision (Order on Second Phase Court Trial) belies this assertion, as it acknowledges that the parties specifically reserved their respective claims as to each other and did not foreclose the issue. Rather, the trial court rejected the claim for other reasons not pertinent to this opinion. The Kulms have not provided us with other argument, authority or reference to the record to further evaluate their claim. As such, we will uphold the decision of the district court.

### F. The District Court Properly Determined That The Kulms Were The "Prevailing Party" For Purposes Of An Award Of Attorney Fees Pursuant To Idaho Code Section 12–120(3)

█ In its order on the second phase of trial, the district court determined that the Kulms were the prevailing party, both on their defense to Bolt's claims and on their counterclaim, and awarded them reasonable

---

**6.** We were advised at oral argument that the Kulms' portion of $2,310.55 was allocated to Freeman's attorneys fees.

attorney fees pursuant to I.C. § 12–120(3). However, in its subsequent order following the parties' motions for reconsideration, the court modified its decision by holding that since Bolt had prevailed on about 30 percent of his contested claims, that the most equitable method of apportionment was to award the Kulms 75 percent of their attorney fees, a total of $13,479.23.[7]

 Bolt contends that there is no basis for the court's determination that the Kulms were the prevailing party. The determination of who is a prevailing party for the purpose of awarding attorney fees is committed to the sound discretion of the trial court. *Suitts v. First Security Bank,* 125 Idaho 27, 35, 867 P.2d 260, 268 (Ct.App.1993). The trial court's determination will not be disturbed on appeal unless an abuse of discretion has occurred, and the burden is on the party disputing the award to demonstrate an abuse of discretion. *Id.* "The determination of a prevailing party involves a three-part inquiry: The court must examine (1) the result obtained in relation to the relief sought; (2) whether there were multiple claims or issues; and (3) the extent to which either party prevailed on each issue or claim." *Joseph C.L.U. Ins. Assoc. v. Vaught,* 117 Idaho 555, 557, 789 P.2d 1146, 1148 (Ct. App.1990).

In this regard, the district court made the following findings:

> For purposes of determining who is the prevailing party, or to what extent that party is the prevailing party, an overall analysis of the entire litigation is necessary. In this context, it is imperative to keep in mind the nature of what was going on between the parties. Specifically, Bolt was to perform the construction under the terms of the written contract, some of which he did, and some of which he didn't. Bolt also sought to charge Kulm's [sic] for certain work claimed to be additional or extra, much of which was disallowed. Bolt also sought to charge overtime which was

disallowed, as well as was indirect overhead disallowed. Bolt had many items to cure, some of which he did, some which he did not, and some which were improperly cured.

The court then proceeded for twelve pages to carefully analyze a total of thirty-six items for which a claim was made, and whether either party prevailed on that claim.

It then concluded as follows:

> After a full consideration of the entire litigation, including the respective claims and defenses, and the amounts of recovery of the *contested* claims, the Court is still of the view that Kulms are clearly the primary prevailing party, however as shown above, Bolt prevailed on about 30% of his contested claims. Therefore, based upon the totality of the case, the Court finds that the most equitable method of apportionment is to award Kulms 75% of their attorney's fees.

Upon this record we conclude that the district court acted within the boundaries of its discretion and consistent with the legal standards applicable to its decision. We further find that the court reached its decision through the exercise of reason. Finding no abuse of discretion, we affirm the district court's decision that the Kulms were the prevailing party and awarding them 75 percent of their attorney fees.

### G. The Kulms Waived All Other Remaining Issues On Cross–Appeal

In their Respondents' Brief the Kulms raise various other issues, but, at oral argument, the Kulms' counsel decided to waive these remaining issues by requesting that the district court's decision be upheld *with only two exceptions,* already discussed.

### IV. CONCLUSION

Except for the concessions made by the Kulms regarding the fireplace trim and the work done on the master bedroom, the deci-

---

7. Authority for apportioning attorneys fees to a partially prevailing party is found in *Massey–Ferguson Credit Corp. v. Peterson,* 102 Idaho 111, 121, 626 P.2d 767, 777 (1980). *See also Bumgarner v. Bumgarner,* 124 Idaho 629, 644–45, 862 P.2d 321, 336–337 (Ct.App.1993); *Badell v. Badell,* 122 Idaho 442, 450, 835 P.2d 677, 685 (Ct.App.1992); *Prouse v. Ransom,* 117 Idaho 734, 739, 791 P.2d 1313, 1318 (Ct.App.1989).

sion of the district court is, in all other respects, affirmed.

As the prevailing party on appeal, the Kulms are entitled to costs and attorney fees under Idaho Code Section 12–120(3). In an action on a contract, I.C. § 12–120(3) generally mandates an award of attorney fees to the prevailing party on appeal as well as at trial. *Bott v. Idaho State Bldg. Authority,* 122 Idaho 471, 481, 835 P.2d 1282, 1292 (1992); *Tyler v. Keeney,* 128 Idaho 524, 528, 915 P.2d 1382, 1386 (Ct.App.1996). The Kulms prevailed on all issues raised by Bolt on appeal, save the two minor concessions. We will therefore award the Kulms their costs and a reasonable attorney's fee on appeal pursuant to Idaho Appellate Rules 40 and 41

LANSING, C.J., and PERRY, J., concur.