867 P.2d 260

**Richard O. SUITTS and Kathryn L. Suitts, husband and wife, Plaintiffs–Appellants,**

v.

**FIRST SECURITY BANK OF IDAHO, N.A., and A. Dale McMurtrey, Personal Representative of the Estate of W.E. McMurtrey, Deceased, Defendants–Respondents.**

No. 19244.

Court of Appeals of Idaho.

Dec. 27, 1993.

Petition for Review Denied Feb. 17, 1994.

Richard O. Suitts and Kathryn L. Suitts, appellants pro se. Richard O. Suitts, argued.

Hall & Friedly, Mountain Home, for respondent First Sec. Bank of Idaho, N.A. Jay R. Friedley, argued.

Ipsen, Perry & Vietz, Boise, for respondent A. Dale McMurtrey. Loren C. Ipsen, argued.

REINHARDT, Judge Pro Tem.

To quote from *Suitts v. First Sec. Bank of Idaho, N.A.,* 110 Idaho 15, 713 P.2d 1374 (1985) (*Suitts III*), "The present case finds its way to this court through a long and circuitous route." Historical data as to the parties and some facts underlying their dispute can be found in *Suitts III; Suitts v. First Sec. Bank of Idaho, N.A.,* 100 Idaho 555, 602 P.2d 53 (1979) (*Suitts II*), and *Suitts v. McMurtrey,* 97 Idaho 416, 546 P.2d 62 (1976) (*Suitts I*).

This action stems from a contract in which Richard and Kathryn Suitts agreed to purchase real estate from W.E. McMurtrey. The contract was executed on April 15, 1969, and called for payment over a period of years, with final payment being due in January of 1975.

In connection with the contract, an escrow account was established with First Security Bank as escrow agent. The deed was not to be delivered to the Suitts until the entire balance of the purchase price was paid in full.

Disputes arose between the Suitts and McMurtrey regarding the escrow contract, an easement, alleged interference with water

rights and a dispute over the boundaries of a lot. On or about February 25, 1972, McMurtrey served a Notice of Default on the Suitts and the Bank. Significant litigation ensued. The present case, the third of three separate cases filed by Suitts against McMurtrey, was filed on January 8, 1975.

The Suitts take the present appeal from three orders of the district court:

1. The order denying the Suitts' motion to amend their complaint to include a cause of action sounding in tort;

2. The order granting the bank's and McMurtrey's motion for summary judgment on the issue of whether a settlement agreement had been reached between the parties, and the subsequent enforcement of said agreement;

3. The order awarding attorney fees and costs to the Suitts against McMurtrey, but not against First Security Bank of Idaho.

**ISSUES PRESENTED IN THIS APPEAL**

The Suitts, who were represented by counsel below but are proceeding pro se before this Court, present the following issues on appeal:

1. Did the district court err in denying the Suitts' motion to amend their complaint to allege a cause of action sounding in tort?

2. Did the trial court err in finding a settlement agreement existed between the parties and then enforcing the settlement agreement?

3. Did the trial court err in not awarding attorney fees to the Suitts against First Security Bank of Idaho?

4. Did the trial court err in not awarding attorney fees against McMurtrey incurred by the Suitts in previous appeals?

**I. MOTION TO AMEND COMPLAINT**

We initially address the Suitts' assertion that the district court erred when, in 1988, it denied their motion to amend their complaint to allege a cause of action in tort.

"The allowance of amendment to pleadings is a matter within the trial court's discretion and will not be disturbed absent a showing of

clear error." *Ada County Highway Dist. v. Acarreque,* 105 Idaho 873, 874–75, 673 P.2d 1067, 1068–69 (1985).

■ When the exercise of discretion by the district court is reviewed on appeal, the appellate court conducts a multi-tiered inquiry into (1) whether the trial court properly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Sun Valley Shopping Center v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

■ Utilizing this test, we conclude that the district court did not abuse its discretion in denying the Suitts' motion to amend their complaint. The trial court properly perceived the I.R.C.P. 15(a) issue as one of discretion. The next question is whether the trial court acted within the boundaries of such discretion and consistent with legal standards applicable to specific choices. The district court primarily denied the motion on the grounds of prejudice. A motion to amend pleadings properly may be denied if the movant has been guilty of delay in requesting leave to amend and as a consequence of the delay, the adverse party would be prejudiced by the amendment. 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1488 at 661–62 (2d ed. 1990). In announcing its ruling from the bench, the district court went to great lengths in spelling out its reasoning as to why the parties would be prejudiced by the requested amendment:

This motion is being denied on the grounds of prejudice. And while I agree with you, Mr. Eismann [Suitts' attorney], I do not hold the time delay between 1980 and the issuance of *Suitts III* against plaintiff, I do hold the time differential between the final remittitur in February of '86, and the date of July 22nd, '88, which is the first time in any of the pleadings that this motion to amend by a supplemental complaint is again brought to the Court's attention. There has been a delay of two years and five months in raising that issue which it is

plaintiff's burden, number one. It's his motion, number two.

This case is set for trial. It is a first priority trial setting that has been set for approximately a year on the Court's calendar. The trial date is November the 7th, 1988; it is a first priority case. The discovery deadline ends 42 days prior to that date which leaves about two weeks. In my opinion, the motion to amend now is prejudicial as it comes too late and it opens up a whole new vista which I will make reference to. . . .

As to the prejudicial aspect: the timing of this motion comes, if not on the eve of trial, within two months of the trial, discovery being cut off within 42 days by my order. As far as I can see, the major thrust of converting this contract into a tort would make reference to this Phelps Ranch ... The last reference I can find to the Phelps Ranch in the entire file is the deposition of Mr. Thornburg back in 1980 and Mr. Suitt's double affidavit in August and September of 1980. From that point forward this particular matter has lain dormant for some eight years. There is now new reference to this damage aspect of the case. . . .

To go back and open up this particular dimension with expert appraisals, increased discovery, tracking down one owner after another, tracing this land from 1976 or '75 when Mr. Suitts said he was forced to sell it, to 1980 and then going forward from 1980 to 1988 in a case that has been set for trial and a case that has been remitted back for over two years and five months is, in my opinion, sufficient prejudice in and of itself to preclude this last minute raising the issue again when it could have been raised two and a half years ago and where the Court would have been more inclined, instead of facing a trial date two months hence, to let plaintiffs try their tort theory assuming, arguendo, that it is viable.

This Court concludes that the district court's decision was consistent with the legal standards governing amendments to pleadings and that the district court reached the decision by an exercise of reason. We find

no basis to conclude that the district court's decision was clearly erroneous. Thus, we affirm the district court's decision not to allow the amendment of the complaint to allege a cause of action sounding in tort.

## II. SUMMARY JUDGMENT

We must next address whether the district court erred in granting summary judgment holding that a valid settlement agreement had been entered into between the parties and enforcing the agreement.

▮▮ In ruling on an appeal from summary judgment, the appellate court will review: (1) whether there is a genuine issue as to any material facts; and (2) whether the moving party is entitled to judgment as a matter of law. *Mitchell v. Siqueiros,* 99 Idaho 396, 582 P.2d 1074 (1978). This determination is to be based upon the "pleadings, depositions, and admissions on file, together with the affidavits, if any." I.R.C.P. 56(c). However, the court should liberally construe the facts in favor of the party opposing the motion, together with all reasonable inferences from the evidence. *Mitchell, supra. See also, Anderson v. City of Pocatello,* 112 Idaho 176, 731 P.2d 171 (1986); *Bunker Hill Co. v. United Steelworkers of America,* 107 Idaho 155, 686 P.2d 835 (1984).

Idaho Rule of Civil Procedure 56(e) states that, "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

▮▮ We agree with the district court that there were no material issues of fact precluding summary judgment enforcing the settlement agreement. The uncontroverted evidence establishes the following. On November 3, 1988, the Suitts authorized their attorney to convey to defendants an offer to settle for $6,030.65, with the condition that the Suitts reserved the right to appeal the dis-

trict court's order of September 7, 1988, denying their motion for leave to amend their complaint to allege a tort claim and with the further condition that all parties reserved the right to request an award of costs and attorney fees. On the same day, the Suitts' attorney contacted defense counsel by telephone and, with the Suitts listening, correctly conveyed the offer as authorized. The defendants orally accepted the agreement by telephone on the same day. McMurtrey's attorney confirmed the settlement with a letter to the Suitts' attorney dated November 3, 1988. On the same day, the Suitts' attorney transmitted to defense counsel by fax a stipulation for judgment and proposed form of judgment to effectuate the settlement. The proposed form of judgment stated:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:
1. That the plaintiffs shall recover from the defendant A. Dale McMurtrey, personal representative of the estate of W.E. McMurtrey, deceased, the sum of $3,910.65, plus interest thereon as from time to time provided by law from the date of this judgment until paid.
2. That the plaintiffs shall recover from the defendant First Security Bank, NA, the sum of $2,120.00, plus interest thereon as from time to time provided by law from the date of this judgment until paid.
3. That costs including attorney fees, if recoverable, shall be determined by the court after memorandum of costs and any objections thereto have been filed and heard by the court as provided by the Idaho Rules of Civil Procedure.

On November 7, McMurtrey's attorney, speaking on behalf of both his client and the bank, responded that the form of judgment drafted by Suitts' attorney was acceptable, but suggested some changes in the stipulation. The form of stipulation proffered by McMurtrey's attorney incorporated most of the language from the Suitts' proposed stipulation, including the preservation of the Suitts' right to appeal the denial of their motion to file an amended complaint. Changes suggested by the defendants' draft of the stipulation included the addition of a sentence stating, "This stipulation and the

judgment entered herein furthermore constitute a full and final settlement of all causes of action alleged in the Plaintiffs' complaint." By return fax transmission on November 7, the Suitts' attorney sent a new draft of the proposed stipulation which incorporated most of the changes suggested by the defendants, including the addition of the sentence quoted above. The only change to this draft requested by defense counsel was the addition of the words "adequately pleaded and" in the following provision:

> The court by order has denied the motion of plaintiffs to file a supplemental or amended complaint in this action. By entering into this stipulation the plaintiffs do not waive and shall not be deemed to have waived their right to appeal from such order and judgment entered herein and the plaintiffs do not waive and shall not be deemed to have waived their right to recover any damages recoverable under such supplemental or amended complaint including but not limited to lost profit damages, punitive damages and intentional infliction of emotional harm and distress damages if such damages are *adequately pleaded and* recoverable under such supplemental or amended complaint. [Emphasis added.]

By telephone conversation, Suitts' attorney agreed to the addition of those three words. At that time, the attorneys for both sides had reached a complete agreement regarding the precise wording of the stipulation.

However, the Suitts personally objected to any changes from the language of the initial stipulation drafted by their attorney on November 3, and contended that their attorney had not been authorized to agree to such changes. By letter dated November 22, 1988, Suitts' attorney notified the defendants that the Suitts did not agree with the revised language of the stipulation. Thereafter, the attorney for McMurtrey prepared and transmitted another draft of the stipulation, deleting language that he believed the Suitts objected to, and specifically deleting the sentence stating that the stipulation and judgment would "constitute a full and final settlement of the causes of action alleged in the plaintiffs' complaint." The defendants heard nothing further from the Suitts and so, on February 8, 1989, McMurtrey's attorney sent a letter to the Suitts' attorney enclosing checks from the two defendants totalling the amount of the settlement and stating that the defendants would agree to "any form of stipulation which even roughly tracks our verbal agreement." By letter dated February 21, 1989, the Suitts' returned the checks with a letter stating that their attorney would be withdrawing and they would seek new counsel to represent them in the litigation. Subsequent correspondence revealed that the Suitts did not consider the matter settled, and they repeatedly declined to accept the settlement payments tendered by the defendants.

The defendants then moved for summary judgment, asking the district court to determine that a binding settlement agreement had been made and to enforce the agreement. The Suitts do not dispute the facts presented by the defendants regarding the content of their communications about settlement, but the Suitts do dispute the defendants' legal conclusion that these communications yielded an enforceable settlement contract. The district court concluded that a binding settlement agreement had been reached and that the dickering over minor language differences for the stipulation did not constitute a rejection of the Suitts' settlement offer, which had been accepted by the defendants during telephone conversations of November 3.

In opposing the summary judgment motion below, and on this appeal, the Suitts contend that no settlement agreement was reached. They argue that the defendants' attorneys' proposal for changes to the stipulation initially drafted by the Suitts' attorney constituted a counteroffer and, hence, a rejection of the Suitts' settlement proposal. We conclude that the Suitts' argument is not supported by the evidence before the court on the summary judgment motion. The uncontroverted evidence establishes that the parties orally agreed to all the essential and material terms of a settlement agreement.

■ Where the parties to litigation enter into a settlement agreement, such a contract is binding and, in the absence of fraud,

duress or undue influence, is enforceable. Such a contract stands on the same footing as any other contract and is governed by the same rules that are applicable to contracts generally. *Wilson v. Bogert,* 81 Idaho 535, 542, 347 P.2d 341, 345 (1959).

■ Preliminarily we note the settlement agreement did not have to be reduced to writing in order to be enforceable. Oral agreements for settlement of litigation are enforceable unless the subject matter of the agreement falls within the proscription of the statute of frauds. *Lyle v. Koubourlis,* 115 Idaho 889, 891, 771 P.2d 907, 909 (1988). On this appeal we are presented with no argument that the agreement was subject to the statute of frauds.

Although the Suitts filed a lengthy pro se appellants' brief and reply brief, they have not clearly articulated what specific language proposed by the defendants for addition to the stipulation was objectionable to them or why they objected to it or considered it inconsistent with their offer. It appears, however, that the Suitts considered inclusion of the following sentence in the defendants proposed form of stipulation—"This stipulation and the judgment entered herein furthermore constitute a full and final settlement of all causes of action alleged in the plaintiffs' complaint"—to be a material change from the terms offered by the Suitts. We find this argument unpersuasive.

First, the uncontroverted evidence establishes that the parties had already made a binding settlement agreement before the exchange of proposed written stipulations occurred. The defendants orally accepted the Suitts' offer without qualification during telephone conversations of November 3, and that agreement encompassed all the essential and material terms of the settlement. Even if the defendants' proposed change in the stipulation drafted by the Suitts' attorney was a material, substantial variation from the agreed terms, (and we conclude it was not, as discussed *infra* ), it would merely be a proposal by the defendants for a modification of the November 3 contract; it would not invalidate the then-existing oral agreement.

Alternatively, even if one assumes that no contract was yet made on November 3 and

that the draft stipulation faxed to the defendants' attorneys by Suitts' attorney on November 3 was Suitts' offer, the defendants' response proposing the "full and final settlement" terminology was not a material variance from the terms of the Suitts' offer. The defendants' proposed clause simply expressed the effect that would follow as a matter of law from their acceptance of the Suitts' offer. A leading treatise on contract law explains:

> Occasionally an offeree, out of ignorance or an abundance of caution, will insert a condition in his acceptance which merely expresses what would otherwise be implied in fact or in law from the offer. Because such a condition involves no qualification of the offeree's assent to the terms of the offer, it is not in truth a conditional acceptance, and it does not preclude the formation of a contract. Among the most common examples of this type of apparently conditional acceptance is the offer to sell land which is accepted subject to the condition that the title is good, for unless such an offer expressly specifies that the offeree must take his chance as to the validity of the title, the offer is generally understood as meaning that good title will be conveyed. [Footnotes omitted.]

2 RICHARD A. LORD, WILLISTON ON CONTRACTS § 6:15 at 122–24 (4th ed. 1991). *See also Shea v. Second Nat. Bank of Washington,* 133 F.2d 17 (D.C.Cir.1942) (offeree's addition of condition that real estate agent's commission be paid from sale proceeds in accepting offer to sell real property did not make the acceptance inoperative because the condition was implicit in the offer and was implied by law anyway); *Karas v. Brogan,* 55 Ohio St.2d 128, 378 N.E.2d 470 (1978) (where offer to sell farm land promised title "free and clear of all liens and encumbrances," statement in acceptance that "oil lease has to be cancelled" was not a modification that constituted counteroffer rather than an acceptance since an oil lease is an encumbrance, the removal of which would be required under the language of the offer).

In the present case, if the parties had signed the stipulation and submitted the pro-

posed judgment in the form drafted by the Suitts' attorney on November 3—which the Suitts acknowledge conform to their offer—the effect would have been a complete settlement of all of the claims in their existing complaint, subject to preservation of the Suitts right to appeal denial the motion to amend their complaint. The "full and final settlement" term requested by the defendants did nothing but express that legal effect, which would have flowed from acceptance of the offer in any event. Therefore, as a matter of law, the defendants' proposed language for the stipulation did not prevent formation of a contract.

The result would be different if the Suitts' had shown that their offer was to settle fewer than *all* of the claims in their existing complaint, i.e., that their offer contemplated preservation of claims in addition to the right to appeal denial of their motion to amend. However, neither the Suitts' affidavits in opposition to the summary judgment motion nor their briefs on appeal identify any claims that they intended to preserve other than the right of appeal. Likewise, the stipulation drafted by their counsel does not suggest that there was to be a partial settlement. Furthermore, the form of judgment prepared by their attorney and accepted without qualification by the defendants, would have concluded all of the claims in the complaint and, by reason of res judicata, would have precluded further assertion of claims that were asserted or could have been asserted in the action other than the right of appeal, which was expressly reserved. Therefore, the Suitts have not demonstrated that the "full and final settlement" clause requested by the defendants materially changed the terms of the settlement offered by the Suitts. Since the term requested by the defendants was not a material change, it did not make their acceptance of Suitts' offer inoperative or prevent formation of a contract.

The summary judgment issued by the district court granted the Suitts all of the benefits for which they bargained in making the settlement agreement. In their settlement offer, the Suitts demanded $6,030.65 in damages, reservation of the right to appeal the district court's denial of their motion to amend their complaint to allege a cause of action in tort, and the right to ask for attorney fees and costs. This is exactly what the Suitts received in the settlement as subsequently enforced by the district court. The Suitts received and cashed checks for the $6,030.65, plus interest. The Suitts obviously retained the right to appeal the district court's denial of their motion to amend their complaint to include a cause of action in tort, as that is an issue before us on this appeal. Further, the Suitts had the right to ask for attorney fees and costs, and were in fact awarded attorney fees and costs against the McMurtreys.

Because the undisputed evidence establishes the existence of a settlement agreement, the defendants were entitled to a judgment enforcing the agreement as a matter of law.

### III. ATTORNEY FEES

We next turn to the question of whether the trial court erred in refusing to award attorney fees against First Security Bank.

The district court awarded attorney fees to the Suitts against McMurtrey but did not award attorney fees against First Security Bank. The Suitts allege that this was error because the district court had determined they were the prevailing party on the main issue of default in the case. The Suitts argue that the district court's holding entitled them to attorney fees under I.C. § 12–120. Further, the Suitts allege that they are entitled to attorney fees from the bank under I.C. § 12–121 and under the terms of the contract entered into between themselves and McMurtrey. The Suitts assert that the district court's denial of attorney fees against First Security Bank was an abuse of discretion.

We will first address the applicability of I.C. § 12–120 to this case. Idaho Code § 12–120 was enacted in 1970. In its original form, § 12–120 mandated an award of attorney fees to the prevailing party in "any action for damages for an injury or wrong to person or property or both, of another where the amount pleaded is one thousand five hundred dollars ($1,500.00) or less ..." On January 8, 1975, the Suitts initiated this ac-

tion by filing their complaint against McMurtrey and First Security Bank seeking damages of $250,000. I.C. § 12–120 was subsequently amended several times, but because the amendments did not become effective until after this action was filed, they are not applicable to this case. *Meyers v. Vermaas,* 114 Idaho 85, 753 P.2d 296 (Ct.App.1988). Because the Suitts' action was for damages exceeding $1,500, they are not entitled to recover attorney fees under § 12–120.

Next, the Suitts claim that they are entitled to an award of attorney fees against First Security Bank under the terms of the escrow contract. We do not agree.

Idaho courts follow the American Rule relating to an award of attorney fees. "We continue to adhere to the so-called 'American rule' to the effect that attorney fees are to be awarded only where they are authorized by statute or contract." *Hellar v. Cenarrusa,* 106 Idaho 571, 578, 682 P.2d 524, 530 (1984).

First Security Bank was not a party to the land sale contract between the Suitts and McMurtrey which contained an attorney fee provision. The district court relied on said contract in awarding attorney fees against McMurtrey. The land sale contract did not contain an attorney fees provision applicable to First Security Bank, nor did the escrow agreement to which the bank was a party contain a provision regarding attorney fees. Thus, the district court correctly determined that no contract existed between First Security Bank and the Suitts which provided for an award of attorney fees.

Finally, the trial court refused to award attorney fees against the bank under I.C. § 12–121. Attorney fees under I.C. § 12–121 may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued, or defended frivolously, unreasonably or without foundation. I.R.C.P. 54(d)(1)(B).

 The general rule is that the determination of who is a prevailing party, for the purpose of receiving an award of attorney fees, is committed to the sound discretion of the trial court. *Decker v. Homeguard Systems,* 105 Idaho 158, 666 P.2d 1169 (Ct. App.1983). On appeal, the trial court's de-

termination will not be disturbed unless an abuse of discretion has occurred.

Idaho Code § 12–121 was enacted in 1976, after the complaint in this lawsuit was filed. However, the Supreme Court has held that, "[t]he application of I.C. § 12–121 to a claim for relief which arose prior to the enactment of that section but tried after the section became law is not an improper retroactive application of that section since we view its provision as remedial and procedural and not as affecting the substantive claim for relief." *Buckalew v. City of Grangeville,* 100 Idaho 460, 463, 600 P.2d 136, 139 (1979), *quoting Jensen v. Shank,* 99 Idaho 565, 566–67, 585 P.2d 1276, 1277–78 (1978). Therefore, applying *Buckalew, supra,* Idaho Code § 12–121 is applicable to this case.

 Still, the decision to award attorney fees under § 12–121 is discretionary with the trial court, with the burden on the person disputing the award to show an abuse of discretion. *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982). When the exercise of discretion is reviewed on appeal, this court conducts a multi-tiered inquiry, set out in *Sun Valley Shopping Center., supra,* 119 Idaho at 94, 803 P.2d at 1000.

 The trial court properly perceived the award of attorney fees as discretionary. It is apparent that the district court carefully considered all relevant factual circumstances and principles of law in relation to an award of attorney fees, and arrived at a decision to deny attorney fees against the bank by an exercise of reason. The district court found that the bank did not act, or defend the lawsuit, frivolously, unreasonably or without foundation. The district court stated,

Nor do I feel that the bank has been involved, acted or defended frivolously, unreasonably or in any sense without foundation under Idaho Code 12–121. It took Supreme Court opinions to even determine that their liability existed for failing to simply interplead the papers....

This lawsuit, the gravamen of it, has been enforcement of Suitts' right under the contract, based upon the McMurtreys' default and in their acts of wrongfully breaching the contract by failing to authorize delivery

of the deed and title documents and so instructing the bank, who through no real fault of their own, got caught in the middle, didn't really know what to do, and with 20/20 hindsight from our Supreme Court should have immediately interpleaded the documents and gotten out of the case.

Based on the foregoing, we affirm the district court's decision to deny an award of attorney fees to the Suitts against First Security Bank.

 must next determine whether the district court erred in not allowing attorney fees incurred by the Suitts in previous appeals. The district court refused to award against McMurtrey, the Suitts' attorney fees incurred in previous appeals to the Supreme Court.

This issue is controlled by *Treasure Valley Plumbing v. Earth Resources Co.*, 115 Idaho 373, 766 P.2d 1254 (Ct.App.1988). In *Treasure Valley,* as in this case, the matter had been before an appellate court on a previous appeal. In the prior appeal, the Court of Appeals did not award any attorney fees. After the second appeal to the Court of Appeals was heard, this Court gave direction to the lower court on remand concerning the attorney fees incurred in the appeals:

> As further guidance on remand, we note that Treasure Valley's first affidavit of attorney fees included services rendered during the appeal decided by our Court in 1984. Those appellate services should not be confused with trial-level services. We disallowed appellate fees in that decision. See *Treasure Valley Plumbing and Heating, Inc. v. Earth Resources, Co.,* 106 Idaho at 924, 684 P.2d at 326. Consequently, services connected with the first appeal should not be considered by the district court in its determination of a reasonable fee.

115 Idaho at 380, 766 P.2d at 1261.

In the present case, the Idaho Supreme Court did not award attorney fees to any of the parties in any of the previous appeals. Therefore, pursuant to *Treasure Valley Plumbing,* the district court was correct in disallowing attorney fees incurred by the Suitts at the appellate level.

Finally we address whether First Security Bank and McMurtrey are entitled to an award of attorney fees on the present appeal.

 Attorney fees may be granted by this Court to the prevailing party pursuant to Idaho Appellate Rule 41 and I.C. § 12–121. Such award is appropriate when this Court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably or without foundation.

 First Security Bank is not entitled to its attorney fees on appeal. There is no contract between the Suitts and the bank which contains a provision for attorney fees. Further, this Court is not left with the abiding belief that the appeal brought by the Suitts was frivolous, unreasonable or without foundation.

 However, provision 22 of the land sale contract between McMurtrey and the Suitts provides for an award of attorney fees to the prevailing party. In the instant appeal, McMurtrey has prevailed on the issues relating to summary judgment and the settlement agreement. Therefore, pursuant to provision 22 of the land sale contract between the parties, McMurtrey is entitled to attorney fees on appeal.

## CONCLUSION

Based on the foregoing, the judgment entered below is affirmed. Costs are awarded to First Security Bank. Costs and attorney fees are awarded to McMurtrey.

LANSING and PERRY, JJ., concur.