204 P.3d 532

Frederick Earl LAWRENCE, and Sam Hopkins, Trustee in Bankruptcy, Plaintiff–Appellant–Cross Respondents,

v.

Keith E. HUTCHINSON, Defendant–Respondent–Cross Appellant.

No. 34775.

Court of Appeals of Idaho.

Feb. 5, 2009.

Lowell N. Hawkes, Chtd., Pocatello, for appellant.

Benoit, Alexander, Harwood High & Valdez, L.L.P., Ketchum, for respondent. Robert M. Harwood argued.

SCHWARTZMAN, Judge Pro Tem.

Frederick Earl Lawrence appeals from the denial of his motion for summary judgment and the grant of Keith E. Hutchinson's motion for summary judgment. Hutchinson cross-appeals from the district court's denial of his motion for attorney fees. We affirm.

## I.

## BACKGROUND

This appeal represents the culmination of more than ten years of litigation. In July 1996, Frederick Earl Lawrence and his wife were involved in an automobile accident. Although the other driver's insurance company paid for the damages to their vehicle, it did not pay for Lawrence's medical bills. Lawrence's wife reached a settlement with the insurance company regarding her own medical bills. Just before the statute of limitations expired, Lawrence hired Eric R. Clark to represent him in a personal injury suit against the driver of the other car. The complaint was filed, but named the owners of the vehicle as shown on insurance documents, even though it was the teenage daughter of the owners who was driving the car. Nearly two years later, Keith E. Hutchinson assumed representation of Lawrence after Clark left their firm. During the intervening time, Lawrence and his wife filed for bankruptcy due to their unpaid medical bills. Hutchinson soon withdrew from the case. It was only after Hutchinson's withdrawal that Lawrence discovered the teenage driver was not named in the suit. Unable to hire another attorney to represent him, Lawrence failed at his *pro se* attempt to fight summary judgment and his personal injury case was dismissed.

Lawrence, represented by Lowell N. Hawkes, brought a legal malpractice claim (*Lawrence I*) against both Clark and Hutchinson, seeking damages for their negligent representation of him in the personal injury case. Clark and Hutchinson obtained separate counsel, with Robert M. Harwood representing Hutchinson. Also involved in *Lawrence I* were the appointed Trustee in the bankruptcy proceeding; an attorney for the Trustee; and Bradley E. Rice, Lawrence's attorney in the bankruptcy proceeding. Rice had authority from Lawrence, the Trustee, and Hawkes to negotiate a settlement in the malpractice action that would be approved by the bankruptcy court. Rice informed Harwood of this arrangement and indicated that he expected a standard release would be executed once a settlement was reached. Harwood was given authority by Clark, his attorney, and Hutchinson to negotiate a settlement. On September 13, 2004, Rice and Harwood spoke by phone and agreed that Clark and Hutchinson would jointly pay Lawrence $37,500 to settle his malpractice claim against them. That same day, Harwood sent two letters to Rice and the other participants indicating that they had reached an agreement to settle for the stated amount.[1] The letters also indicated that a proposed joint release would be forthcoming, including a confidentiality provision to the extent allowed by the bankruptcy proceedings. Due to the upcoming trial date and the date scheduled for the bankruptcy court to

1. Harwood's first letter stated: "This will confirm our recent telephone conversation in which the Defendants in the state court offered and you accepted a joint total settlement of $37,500.... Given the fact that the case appears to be resolved, except for the formality of approval in the Bankruptcy Court, I will file a Motion to Vacate the Trial Date in the state court case." The second letter addressed payment of the agreed amount: "This will confirm that we have agreed to settle the above for a total of $37,500. One half of that will be paid by Mr. Hutchinson's carrier and the other half by Mr. Clark's. As soon as I receive the trustee's tax id number I will order my draft."

approve the proposed settlement, Harwood filed a motion for continuance in the trial court and an affidavit in support thereof. In his affidavit, Harwood informed the court that the parties had agreed to a joint settlement figure of $37,500. The affidavit concluded:

> Given that fact that a settlement, in principle, has been reached with the parties, the Defendant Hutchinson feels that a trial would be an unnecessary waste of time and money.

The district court vacated the trial date, but did not dismiss the case. Both Lawrence and Hutchinson proposed release language, with no agreement as to the requirements for the final release. Sometime in November the parties discovered that Lawrence had previously made a broad formal assignment of all his claims to a medical provider, potentially exposing Hutchinson and Clark to further liability. Hutchinson was adamant that the release include a confidentiality clause and an indemnity clause, and while Hawkes proposed language for these clauses, the language was not satisfactory to Hutchinson.

In March, 2005, the district court held a status conference on the case. Hawkes did not appear at the hearing; another attorney appeared on behalf of Lawrence as a favor to Hawkes. The substitute attorney represented that the case was settled, but the parties could not agree on release language. The district judge expressed his belief that there was no settlement if they could not agree on the release. Lawrence asked the court not to dismiss the case at that time, but to give the parties more time to finalize the details. The district court issued an order to show cause why the case should not be dismissed. At the subsequent hearing in June, Hawkes represented that he had no objections to Harwood's request for a new trial date and explained he did not seek a date sooner because he was trying, in good faith, to work through their differences. The court set a new trial date rather than dismiss the case outright. Several months later, Hutchinson moved for summary judgment. At the hearing in October of 2005, Hawkes argued for the first time that an enforceable settlement agreement had been reached and that it

should be enforced against Hutchinson. However, Hawkes did not amend the original malpractice complaint to seek enforcement of a settlement agreement, and the court decided that it lacked jurisdiction to grant such relief without an amendment. The district judge stated:

> It seems to me that there are tons of factual questions with respect to whether there was or wasn't an agreement, what the terms of the agreement were. It is clear to me that you gentlemen reached an agreement on the numbers. That is absolutely clear to me. It is also clear to me that it is customary in every case that I've ever been involved with for a case to conclude with the execution of some form of reasonable release document.
>
> . . . .
>
> I'm not in a position to sit here and dictate to you what a standard release is. Frankly, there is no such thing. There are standard forms that different people use, but I venture to say that there are about as many settlement agreements and release documents as there are lawyers and lawsuits and they come in all shapes and sizes and I'm not in a position to dictate what the terms of your agreement are or even if you have one.

The district court dismissed Lawrence's malpractice claim against Hutchinson without prejudice, so that Lawrence could file a new action to enforce the purported settlement agreement. The claim against Clark was continued for trial.

Lawrence did not appeal the district court's order. Instead, he first attempted to enforce the agreement in bankruptcy court, but the judge exercised his discretion pursuant to 28 U.S.C. § 1334(c)(1) and declined to rule on the issue out of respect for the state courts. The parties continued to negotiate, and Clark eventually agreed to pay $24,000 to settle the claim against him, using a release prepared by Hawkes. Although Hawkes and Harwood continued to negotiate, they could not reach an agreement on release language, so Lawrence filed a complaint for damages arising out of the breach of the purported settlement agreement, instigating the present action. Hutchinson answered

the complaint, and Lawrence filed a motion for summary judgment. Hutchinson filed a cross-motion for summary judgment. After reviewing the prior proceedings in *Lawrence I* and the correspondence related to settlement, the district court ruled in favor of Hutchinson. The district court found that the confidentiality and indemnity provisions were material to the agreement, were not agreed upon, and therefore there was no enforceable agreement between Lawrence and Hutchinson. The court granted Hutchinson's motion for summary judgment and dismissed the case.

Hutchinson brought a motion for costs and attorney fees pursuant to Idaho Rule of Civil Procedure 54(d), and Idaho Code § 12–120. Lawrence objected on the basis that the statutory requirements of that section had not been met. Fees were ultimately denied because damages of $25,000 or less were not pleaded by either party. Lawrence appeals from the district court's denial of his motion for summary judgment and the granting of Hutchinson's motion for summary judgment. Hutchinson cross-appeals the denial of attorney fees under I.C. § 12–120(1).

## II.

### DISCUSSION

#### A. Cross–Motions for Summary Judgment

Both Lawrence and Hutchinson moved for summary judgment. We first note that summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986). The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and does not in and of itself establish that there is no genuine issue of material fact.[2] This Court

must evaluate each party's motion on its own merits. *Intermountain Eye & Laser Ctrs., P.L.L.C. v. Miller*, 142 Idaho 218, 222, 127 P.3d 121, 125 (2005); *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 360, 93 P.3d 685, 691 (2004); *Intermountain Forest Mgmt., Inc. v. Louisiana Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001); *Stafford v. Klosterman*, 134 Idaho 205, 206, 998 P.2d 1118, 1119 (2000); *Kromrei v. AID Ins. Co.*, 110 Idaho 549, 551, 716 P.2d 1321, 1323 (1986).

When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct.App.1994). When an action will be tried before the court without a jury, the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences. *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007); *Intermountain Forest Mgmt.*, 136 Idaho at 235, 31 P.3d at 923; *Stafford*, 134 Idaho at 206, 998 P.2d at 1119. Resolution of the possible conflict between the inferences is within the responsibilities of the fact finder. *P.O. Ventures*, 144 Idaho at 237, 159 P.3d at 874; *Cameron v. Neal*, 130 Idaho 898, 900, 950 P.2d 1237, 1239 (1997). This Court reviews the inferences drawn by the district judge to determine whether the record reasonably supports those inferences. *P.O. Ventures*, 144 Idaho at 237, 159 P.3d at 874; *Intermountain Forest Mgmt.*, 136 Idaho at 235, 31 P.3d at 923; *Davis v. Peacock*, 133 Idaho 637, 640, 991 P.2d 362, 365 (1999).

#### 1. Did Lawrence and Hutchinson enter into a binding settlement agreement?

Lawrence asserts that he and Hutchinson entered into an enforceable settlement

---

**2.** During oral argument, both sides agreed that summary judgment was the appropriate method

of resolving this case and that a trial was not necessary.

contract when Rice and Harwood orally agreed on a monetary settlement figure on September 13, 2004. Hutchinson denies that the oral agreement comprised all of the material terms of the settlement, and therefore concludes that it was only a first step in the negotiation process.

 Stipulations for the settlement of litigation are regarded with favor by the courts and will be enforced unless good cause to the contrary is shown. *Kohring v. Robertson*, 137 Idaho 94, 99, 44 P.3d 1149, 1154 (2002); *Young Electric Sign Co. v. Winder*, 135 Idaho 804, 808, 25 P.3d 117, 121 (2001). Generally, oral settlement agreements do not have to be reduced to writing to be enforceable. *McColm–Traska v. Baker*, 139 Idaho 948, 951, 88 P.3d 767, 770 (2004); *Lyle v. Koubourlis*, 115 Idaho 889, 891, 771 P.2d 907, 909 (1988). Oral stipulations are binding when acted upon or entered on the court records. *Kohring*, 137 Idaho at 99, 44 P.3d at 1154; *Conley v. Whittlesey*, 126 Idaho 630, 633, 888 P.2d 804, 807 (Ct.App.1995). However, an attempted stipulation is ineffective when it is clear from the record that the parties never assented to it. *Kohring*, 137 Idaho at 99, 44 P.3d at 1154; *First Sec. Bank v. Neibaur*, 98 Idaho 598, 605, 570 P.2d 276, 283 (1977). An agreement entered into in good faith in order to settle adverse claims is binding upon the parties, and absent a showing of fraud, duress or undue influence, is enforceable either at law or in equity. *Young Electric Sign Co.*, 135 Idaho at 808, 25 P.3d at 121; *Wilson v. Bogert*, 81 Idaho 535, 542, 347 P.2d 341, 345 (1959).

 Oral settlement agreements must comply with the requirements for contracts. *McColm–Traska*, 139 Idaho at 951, 88 P.3d at 770; *Kohring*, 137 Idaho at 99, 44 P.3d at 1154. Such a contract stands on the same footing as any other contract and is governed by the same rules that are applicable to contracts generally. *Suitts v. First Sec. Bank of Idaho*, 125 Idaho 27, 33, 867 P.2d 260, 266 (Ct.App.1993); *see also Wilson*, 81 Idaho at 542, 347 P.2d at 345. Formation of a valid contract requires that there be a meeting of the minds as evidenced by a manifestation of mutual intent to contract. *P.O. Ventures*, 144 Idaho at 238, 159 P.3d at 875.

This manifestation takes the form of an offer and acceptance. *Id.* In a dispute over contract formation it is incumbent upon the plaintiff to prove a distinct and common understanding between the parties. *Id.*; *Inland Title Co. v. Comstock*, 116 Idaho 701, 703, 779 P.2d 15, 17 (1989). There must be a meeting of the minds on the essential terms of the agreement. *Hess v. Wheeler*, 127 Idaho 151, 154, 898 P.2d 82, 85 (Ct.App.1995); *see also MIF Realty L.P. v. Rochester Assoc.*, 92 F.3d 752, 756 (8th Cir.1996). A contract must be complete, definite, and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty. *Kohring*, 137 Idaho at 99, 44 P.3d at 1154; *Giacobbi Square v. PEK Corp.*, 105 Idaho 346, 348, 670 P.2d 51, 53 (1983).

 Whether the parties to an oral agreement or stipulation become bound prior to the drafting and execution of a contemplated formal writing is largely a question of intent. *Kohring*, 137 Idaho at 99, 44 P.3d at 1154; *Conley*, 126 Idaho at 634, 888 P.2d at 808. The intent of the parties is to be determined by the surrounding facts and circumstances of each particular case. *Conley*, 126 Idaho at 634, 888 P.2d at 808. The stipulations are best evaluated by looking to the very words of counsel and their clients. *Id.*; *see also First Sec. Bank of Idaho v. Hansen (Hansen)*, 107 Idaho 472, 477, 690 P.2d 927, 932 (1984). Circumstances which have been suggested as being helpful in determining the intention of the parties are: whether the contract is one usually put in writing; whether there are few or many details; whether the amount involved is large or small; whether it requires a formal writing for a full expression of the covenants and promises; and whether the negotiations themselves indicate that a written draft is contemplated at the final conclusion of the negotiations. *Elliott v. Pope*, 42 Idaho 505, 511, 247 P. 796, 797 (1926).

Lawrence argues on appeal that there were no material terms left to be established after the oral agreement to a money amount and that the representation to the court that a settlement had been reached confirms this. Lawrence asserts that confidentiality and in-

demnity did not become important until after the settlement offer was accepted and therefore could not be material terms. Hutchinson contends that indemnity and confidentiality were material from the beginning of negotiations and no settlement could be reached without those terms.

In a letter from Rice to Harwood dated August 25, 2004, it is clearly stated that a written release was expected to be executed by the parties. Although Rice states that specific language had not previously been discussed, he was anticipating "standard" language. All of the parties later confirmed that written releases were regularly used in the settlement of cases similar to this one. The district court also indicated that a written release would normally follow this type of oral agreement. However, the only term of the agreement that was specifically determined during the September 13 phone call was the amount of money to be paid by Clark and Hutchinson. Thereafter the parties informed the court that a settlement had been reached, but the only term put before the court in order to vacate the trial date was the money amount of settlement. Numerous letters and proposals for release language were sent between the parties, but no specific agreement could be reached. In December of 2004, Harwood submitted a "final offer" for proposed release language, which Hawkes declined to accept. Thereafter, Hawkes tendered a redrafted release proposal to Hutchinson which was rejected by letter dated May 23, 2005, due to perceived problems over the indemnity language and obligation. In the same letter, Hutchinson formally withdrew any offers of settlement. It was not until a hearing was held on Hutchinson's subsequent motion for summary judgment in *Lawrence I* that Hawkes first asserted their agreement from September 13, 2004, was enforceable and complete.

Lawrence relies on two cases to support his assertion that there was an enforceable oral agreement, but both are distinguishable. In *Suitts*, 125 Idaho 27, 867 P.2d 260, attorneys for each party agreed orally to a monetary settlement amount and discussed several other necessary terms of the agreement. *Id.* at 31, 867 P.2d at 264. The agreement

was memorialized two months later in a letter, although some details of the final writing had not been established. Suitts eventually repudiated the agreement, but this Court affirmed the district court's enforcement of the settlement. *Id.* at 34, 867 P.2d at 267. During the initial telephone conversation, Suitts' offer was accepted without qualification and encompassed all of the essential and material terms of the settlement. *Id.* at 33, 867 P.2d at 266. Therefore, the parties' failure to execute a formal written agreement did not prevent enforcement of the settlement. Although there was some bargaining over language details after the telephone conversation, the language proposals did nothing but express the legal effect of a settlement agreement. *Id.* at 34, 867 P.2d at 267. Thus, a legally enforceable contract was formed by the parties' oral agreement.

Similarly, in *Kohring*, 137 Idaho 94, 44 P.3d 1149, the parties informed the district court that they had reached a settlement agreement and stated the terms on the record in order to vacate their trial date. There were seven disputed issues that the parties resolved, and each was described to the court in detail. The parties also informed the court of their intention to execute a written agreement consistent with the terms expressed to the court. A dispute arose during the drafting of the writing, and the parties returned to court for clarification and enforcement of the settlement agreement. The Idaho Supreme Court found the oral agreement enforceable because it was clearly presented to the court as a final agreement. *Id.* at 101, 44 P.3d at 1156. While before the district court, the parties explained the terms of the settlement in detail, and were each asked, on the record, whether the stated terms covered all aspects of the settlement and if any corrections needed to be made. *Id.* at 99–100, 44 P.3d at 1154–55. The parties all assented to the terms of the agreement as they were stated; thus, the failure to execute a written agreement did not impede enforcement of the original agreement as stated before the court. *Id.* at 101, 44 P.3d at 1156.

In the case at bar, we do not have the transcript from the hearing on Hutchinson's

motion for continuance. However, the affidavit submitted in support of the motion indicated to the court that a money settlement amount had been agreed to and the parties were no longer in need of a trial. There were no statements indicating that all issues had been resolved, or that the money amount encompassed the entire agreement. Instead, the affidavit states that the parties had reached an agreement, "in principle." The district court inferred, and we agree, that this was not a statement on the record setting forth all material terms of the settlement agreement. *Cf. Hansen,* 107 Idaho at 479, 690 P.2d at 934 (enforcing oral stipulation after parties state terms of agreement on the record and are given the opportunity to correct or modify the terms, but do not indicate any further resolution is required); *with Conley,* 126 Idaho at 635, 888 P.2d at 809 (holding oral declaration of terms unenforceable because parties anticipated formal writing and neither side treated oral statements as final agreement as evidenced by neither side moving for enforcement of the agreement); *and MIF Realty L.P.,* 92 F.3d at 756 (concluding that continued proffer of changing settlement agreements indicated that "parties' initial belief that they had agreed to the material terms of a settlement was mistaken").

 Hutchinson represented to the district court that the parties had reached an "agreement, in principle." This is not an unconditional statement of agreement. *Conley,* 126 Idaho at 634, 888 P.2d at 808. As the district court inferred, a formal writing was obviously contemplated by the parties, and there was no meeting of the minds in this case as to all material terms. Lawrence insists that the only material term of the agreement was the amount of money to be paid, yet he did not move to enforce his purported settlement agreement until faced with summary judgment on the underlying malpractice claim a year after the supposed settlement occurred. Lawrence participated in extensive negotiations on the language of the release, recognizing the significance of the indemnity and confidentiality clauses to Hutchinson. At no point did Lawrence conduct himself as though the September 13 conversation represented a full and final set-

tlement agreement. Neither the words nor the actions of the parties show a meeting of the minds on all of the material terms of the settlement agreement, and as such the statements before the court that a settlement had been reached do not amount to an enforceable contract. The district court's inferences are reasonably supported by the record; the court did not err by denying Lawrence's motion for summary judgment and granting Hutchinson's motion.

### 2. Should Hutchinson be judicially estopped from denying the settlement agreement?

 Lawrence also asserts on appeal that Hutchinson should be judicially estopped from denying the existence of an enforceable settlement agreement. The Idaho Supreme Court adopted the doctrine of judicial estoppel in *Loomis v. Church,* 76 Idaho 87, 277 P.2d 561 (1954). *See also Heinze v. Bauer,* 145 Idaho 232, 235, 178 P.3d 597, 600 (2008). In *Loomis,* the Court held that a litigant who obtains a judgment, advantage, or consideration from one party through means of sworn statements is judicially estopped from adopting inconsistent and contrary allegations or testimony, to obtain a recovery or a right against another party, arising out of the same transaction or subject matter. *Loomis,* 76 Idaho at 93–94, 277 P.2d at 565. Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. *McKay v. Owens,* 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997) (quoting *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 600 (9th Cir.1996)). The policies underlying judicial estoppel are general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings. *Id.* Judicial estoppel is intended to prevent a litigant from playing fast and loose with the courts, *Heinze,* 145 Idaho at 235, 178 P.3d at 600, and to prevent abuse of the judicial process by deliberate shifting of positions to suit the exigencies of a particular action, *McKay* 130 Idaho at 153, 937 P.2d at 1227.

■ The application of judicial estoppel is one of discretion and is not appropriate here. *See Sword v. Sweet,* 140 Idaho 242, 252, 92 P.3d 492, 502 (2004). Hutchinson was not "playing fast and loose" with the district court when he moved for a continuance on the basis of a joint settlement figure of $37,500. Informing the court that its judicial resources could be applied elsewhere inured a benefit to Lawrence and Hutchinson equally. *Wang Lab. Inc. v. Applied Computer Sci. Inc.,* 958 F.2d 355, 359 (Fed.Cir.1992). Although Hutchinson eventually was proved incorrect after he informed the court that the parties had reached a settlement, in principle, he did not gain an advantage over Lawrence. It is fully understandable that parties, on the verge of settlement, would seek to avoid unnecessarily using judicial resources by vacating a trial date. This action alone does not trigger judicial estoppel. *Id.* Accordingly, Hutchinson is not judicially estopped from disputing the existence of a settlement agreement.

### B. Attorney Fees

■ Hutchinson appeals the district court's denial of attorney fees below. Hutchinson moved for costs and attorney fees pursuant to I.C. § 12–120(1) and I.R.C.P. 54(d). Section 12–120(1) of the Idaho Code states, in relevant part:

> Except as provided in subsections (3) and (4) of this section, in any action where the amount pleaded is twenty-five thousand dollars ($25,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney's fees.

This section is interpreted literally by the courts. *Cox v. Mueller,* 125 Idaho 734, 737, 874 P.2d 545, 548 (1994) ("[A] plaintiff must comply with the literal mandate of I.C. § 12–120(1) to be awarded attorney fees upon prevailing."). The pleadings must precisely comply with the statutory mandate and formally plead an amount of $25,000 or less. *L & W Supply Corp. v. Chartrand Family*

*Trust,* 136 Idaho 738, 746, 40 P.3d 96, 104 (2002). Where the parties plead a general amount due, but do not specify that it is $25,000 or less, this Court will not award attorney fees. *See Chavez v. Barrus,* 146 Idaho 212, 224–25, 192 P.3d 1036, 1048–49 (2008) (denying attorney fees because the plaintiff sought $21,500 plus interest, costs, and an undivided interest in real property); *Gillespie v. Mountain Park Estates, L.L.C.,* 142 Idaho 671, 675, 132 P.3d 428, 432 (2006) (refusing to award attorney fees where the answer sought treble damages of not less than $15,000); *D.A.R. Inc. v. Sheffer,* 134 Idaho 141, 147, 997 P.2d 602, 608 (2000) (holding award of fees improper where complaint sought only an accounting and no damages in any amount); *Aberdeen–Springfield Canal Co. v. Peiper,* 133 Idaho 82, 94–95 982 P.2d 917, 929–30 (1999) (denying attorney fees because the total amount pleaded against the multiple defendants exceeded $25,000 and was not individually divided; section 12–120(1) to be construed "narrowly").

None of the pleadings in this case specifically assert "damages of $25,000 or less." Lawrence's complaint seeks damages for the breach of a settlement agreement wherein the parties agreed to settle for $37,500. Despite stating that the settlement agreement was joint, the complaint does not state exactly how much money Lawrence sought as damages against Hutchinson.[3] While it may be inferred that Hutchinson's share of the settlement agreement was in fact less than $25,000, such an inference does not comply with the Idaho Supreme Court's mandates on the literal interpretation of I.C. § 12–120(1). Lawrence conceded at oral argument that had he prevailed, he too would be barred from seeking attorney fees due to this failure in the pleadings. The district court did not err by denying Hutchinson's motion for attorney fees.

### III.

### ATTORNEY FEES ON APPEAL

■ Both Hutchinson and Lawrence seek attorney fees on appeal pursuant to I.C.

---

**3.** The prayer simply requests "an award of damages against Defendants for breach of the settlement agreement, plus interest … costs, and attorney fees plus such other relief as is appropriate."

§ 12–121. An award of attorney fees may be granted under I.C. § 12–121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett,* 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct.App.1995). Neither party's arguments in this case were frivolous or lacking in foundation. Therefore, attorney fees on appeal are denied.

## IV.

### CONCLUSION

The district court did not err in denying Lawrence's motion for summary judgment and granting Hutchinson's cross-motion for summary judgment. The parties did not have an enforceable oral settlement agreement when they agreed to the monetary amount. The parties contemplated a formal release and indemnity as material to the settlement, and these terms were never mutually resolved. The district court also did not err by denying Hutchinson attorney fees below, as there was not a strict pleading of damages in the amount of $25,000 or less. As each party has prevailed in part, no costs will be awarded on appeal.

Chief Judge LANSING concurs.

Judge GUTIERREZ dissenting.

I respectfully dissent. The outcome of this case turns on the parties' intent, which we infer from the facts and circumstances surrounding the alleged agreement. *Conley,* 126 Idaho at 634, 888 P.2d at 808. For this, we look to the words and conduct of the attorneys and their clients. *Id.* Here, the majority puts too much emphasis on Harwood's use of the phrase "settlement, in principle." However, those are not the only words that direct us to his true intent on September 13, 2004. In his letters memorializing their agreement, Harwood indicated that there were only two impediments left between the parties and the ultimate conclusion of the lawsuit: "the formality of approval in the Bankruptcy Court," and receipt of the trustee's tax id number in order for Hutchinson to pay his share of the $37,500. Furthermore, in his affidavit in support of the motion to vacate trial, Harwood informed the district court that "Defendant Hutchinson feels that a trial would be an unnecessary waste of time and money." Examination of all of the parties' communication through September 13, 2004, indicates a binding oral agreement had been reached by the parties.

This case is not distinguishable from *Suitts* or *Kohring,* for the parties had covered all of the material terms of their agreement. Despite the understanding that the parties would execute a standard release, Harwood indicated that the only issues remaining to finalize the settlement were access to the trustee's tax id number and approval from the Bankruptcy Court. Indemnity and confidentiality were not paramount to the settlement of the case, but were issues that arose after the fact. Just because this settlement agreement was not as complicated as the agreements in *Suitts* and *Kohring* does not make it any less enforceable.

Even if it is assumed that the parties disagreed as to the terms involving the release, summary judgment to either party would be inappropriate. Where there are unresolved issues of material fact, it is improper to declare that either party is entitled to judgment as a matter of law. *Cf. Edwards,* 111 Idaho at 852, 727 P.2d at 1280. Therefore, I would reverse the district court's grant of summary judgment and remand for trial on the merits.